Eric A. GRIFFIN, Appellee,

v.

Gregory HILKE and Officer Francis Stoll, Appellants.

No. 86–1152.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1986.

Decided Nov. 6, 1986.

Rehearing and Rehearing En Banc Denied Jan. 22, 1987.

Julian Bush, St. Louis, Mo., for appellants.

James E. Hullverson, Jr., St. Louis, Mo., for appellee.

Before ROSS, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

St. Louis police officers Gregory Hilke and Francis Stoll appeal the district court's judgment based on a jury verdict awarding Eric A. Griffin $750,000 in damages under 42 U.S.C. § 1983. For the reasons discussed below, we hold that the district court erred in denying defendants' motion for judgment notwithstanding the verdict or a new trial. We reverse the judgment of the district court, dismiss defendant Stoll and remand for a new trial for defendant Hilke.

## I. BACKGROUND.

At approximately 12:30 a.m. on February 18, 1978, Officer Stoll heard on his radio

that shots had been fired at 3971 Lafayette in St. Louis. He drove there and saw three men fighting on the sidewalk. He stopped his car and placed it in such a manner as to prevent a car with another man inside from leaving the scene. He then exited his car and attempted to break up the fight. At this time, one of the three men, Griffin, began to leave. Stoll heard one of the others say that Griffin had their money. Stoll called out "come back here nigger" and fired a warning shot in the air. Griffin fled on foot with Stoll in pursuit. Stoll followed Griffin around several buildings and over at least one fence, until he lost Griffin at McRee, an east-west street that runs parallel one block to the north of Lafayette.

During the chase, Stoll, carrying a hand-held radio, sent a broadcast over police airways that he was chasing a suspect wanted for a possible assault and robbery. Although the parties dispute whether Stoll told the radio dispatcher that the suspect was armed, Stoll concedes that the broadcast which followed included the words "is armed" or "armed suspect." Stoll also testified that he based his radio report on the broadcast he initially heard and on his perception that Griffin was running with his coat draped over his arm.

Officer Hilke heard Stoll's broadcast warning from his patrol car which was parked approximately one-and-one-half to three blocks away from 3971 Lafayette, the site of the alleged original shots. In the radio transmission, Hilke heard the phrase "armed" or "is armed," which Griffin contends was later inserted into the tape. Hilke drove to the alley behind 3971 Lafayette, exited his car and looked around. He saw Griffin run across the alley. Hilke also claimed that Griffin had his coat draped over his arm. Hilke took out his gun and pursued Griffin.

Griffin ran north toward McRee. When Hilke reached McRee he called to Griffin to stop. Griffin turned around and saw Hilke, but continued to flee. Hilke tripped and fell down some steps leading from the sidewalk up to the house at 3928 McRee. When he regained his balance, Hilke fired a warning shot. Griffin continued to run, heading north across McRee, and west down an alley running parallel to McRee. He then cut through yards, jumping over fences toward Blaine Avenue, with Hilke in pursuit. Hilke testified that, "As [Griffin] would go over a fence, I would be approaching the fence and he would be in the middle of a yard as I was * * * going over one of the other fences." (Tr. 11/5 at 78.)

Finally, from a distance of 30 to 40 feet, Hilke shot Griffin in the leg. Hilke testified that he believed Griffin's escape was imminent. He did not know how many fences lay ahead of Griffin. He aimed at the bottom of Griffin's leg because he did not want to kill Griffin.

Hilke testified that he was afraid to run up to Griffin for fear he would be shot. Hilke also testified that he was concerned that Griffin might shoot other officers who had been called to the scene and were unaware of Griffin's precise location. The police did not find a gun on Griffin's person or in the surrounding area, however.

As a result of the shooting, Griffin's leg was amputated below the knee. Following the loss of his leg, Griffin has been hospitalized for depression and has attempted suicide.

In July 1978, Griffin filed suit against Hilke, in Missouri state court, alleging tortious battery. Griffin subsequently amended his petition several times, eventually alleging civil rights violations under 42 U.S.C. § 1983 against both Stoll and Hilke. The case was removed to federal district court in February 1983. Following a six-day trial, in November 1984, the jury returned a verdict against both Stoll and Hilke for damages of $750,000. The district court denied Stoll's and Hilke's motion for judgment n.o.v. or, in the alternative, for a new trial. This appeal followed.

## II. DISCUSSION.

### A. Deprivation of Liberty Without Due Process.

Stoll and Hilke ("the police") contend that the district court erred by first deny-

ing their motion to dismiss on the ground that Griffin failed to state a cause of action, and second, by denying their motion for judgment n.o.v. or a new trial.

### 1. Stoll.

The police argue that the only aspect of Stoll's conduct which could be deemed a cause of Griffin's injury was his broadcast that he was chasing a suspect wanted for a possible assault and robbery. Stoll allegedly based this broadcast on (a) the initial report that shots had been fired; (b) the fight which he saw; (c) the claim he heard that Griffin had taken money; (d) Griffin's flight; and (e) his perception that Griffin was running with his coat over his arm. The police assert that, under the circumstances, Stoll's conduct did not even amount to ordinary negligence, and thus did not rise to the level of a constitutional violation.

 The Supreme Court has held that the due process clause "is not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." *Daniels v. Williams,* — U.S. ——, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); *see also New v. City of Minneapolis,* 792 F.2d 724, 725 (8th Cir.1986) (per curiam) (dictum). Thus a plaintiff must show more than mere negligence to recover for a due process violation under section 1983. *See Daniels,* 106 S.Ct. at 665. In contrast, an allegation that a law enforcement officer used excessive force in apprehending a suspect or effecting an arrest automatically implicates the substantive component of the due process clause in terms of fourth amendment and liberty interests. *See Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 1699–1707, 85 L.Ed.2d 1 (1985); *New,* 792 F.2d at 726.

 We agree with the police that the district court erred in denying the police's motion for judgment n.o.v. with regard to Stoll. In reviewing the district court's denial of a motion for judgment n.o.v., we consider the evidence in the light most favorable to the prevailing party, assuming as true all facts that the prevailing party's evidence tended to prove, and giving the prevailing party the benefit of all favorable inferences. This court will not overturn the district court's ruling on a motion for judgment n.o.v. if the evidence is susceptible of any reasonable inference sustaining the prevailing party's position. *See Williams v. Ryder/P.I.E. Nationwide, Inc.,* 786 F.2d 854, 857 (8th Cir.1986).

 We find that the evidence was insufficient to support Griffin's claim against Stoll. Stoll's conduct in transmitting an erroneous broadcast did not rise to the level of a substantive constitutional violation, because he never used force against Griffin or otherwise committed an unreasonable seizure. *Compare Tennessee v. Garner,* 105 S.Ct. at 1697. To recover against Stoll under section 1983 for a due process violation, Griffin was required to plead and prove that Stoll was more than negligent. *See Daniels,* 106 S.Ct. at 663; *see also New,* 792 F.2d at 725–726 (dictum). We note that Griffin's complaint alternatively alleged that Stoll intentionally transmitted a false broadcast.[1] The record fails to disclose any evidence that Stoll was more than negligent, however. Accordingly, we reverse the district court's denial of judgment n.o.v. with regard to Stoll and dismiss.

### 2. Hilke.

With regard to Hilke, the police argue that he based his decision to fire at Griffin on (a) the initial report of shots fired; (b)

---

**1.** Count IV of Griffin's Third Amended Petition alleged in pertinent part:

Defendant Stoll *deliberately and intentionally* communicated Plaintiff was a fleeing felon when Defendant Stoll *knew* such communication was false, and Defendant Stoll *deliberately and intentionally* communicated and broadcast that it was necessary to use deadly force

to arrest Plaintiff when Defendant Stoll *knew* such message was false. As a direct result of either the negligence or intentional act of Defendant Stoll as aforesaid, Defendant Stoll initiated and instituted the battery and shooting against Plaintiff by Officer Hilke. [Emphasis supplied.]

the broadcast of the chase of an assault and robbery suspect; (c) the broadcast of the word "armed" in connection with the chase; and (d) his perception that Griffin was fleeing with his coat over his arm. The police assert that Hilke's conduct did not rise to the level of gross negligence or recklessness. They contend that Hilke followed the policy of the Board of Police Commissioners which permitted use of deadly force under the circumstances. They argue further that even if the use of deadly force was an "unreasonable seizure," in violation of the fourth amendment, there was no violation of Griffin's right to procedural due process. They contend that Missouri law provides an adequate process by which a person subjected to an unreasonable seizure may receive compensation.

■ Allegations of brutality by law enforcement personnel apprehending a suspect or effecting an arrest are typically analyzed in terms of fourth amendment and liberty interests. If sufficiently egregious, a deliberate use of excessive force in this context can implicate the substantive fourth amendment guarantee against unreasonable seizures, the substantive due process right to be free from abusive governmental conduct "offensive to human dignity," or both. *See e.g., Tennessee v. Garner,* 105 S.Ct. at 1699–1707; *New,* 792 F.2d at 726; *Fernandez v. Leonard,* 784 F.2d 1209, 1214–17 (1st Cir.1986); *Patzner v. Burkett,* 779 F.2d 1363, 1371 (8th Cir. 1985); *Davis v. Forrest,* 768 F.2d 257, 258 (8th Cir.1985). Use of deadly force against a fleeing felon is an unreasonable seizure violating the fourth amendment, unless it is necessary to prevent the suspect's escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. *Tennessee v. Garner,* 105 S.Ct. at 1697. Moreover, such an intentional abuse of official power "implicates the substantive component of the due process clause regardless of the availability of state remedies." *New,* 792 F.2d at 726; *see also Wilson v. City of North Little Rock,* 801 F.2d 316, 321–22 (8th Cir.1986);

*McClary v. O'Hare,* 786 F.2d 83, 86 n. 3 (2d Cir.1986); *Mann v. City of Tucson,* 782 F.2d 790, 793 (9th Cir.1986.) *Accord, Daniels,* 106 S.Ct. at 677–78 (Stevens, J. concurring in judgments).

■ We hold that the district court did not err in denying the police's motion for judgment n.o.v. or a new trial with regard to Hilke on due process grounds. Hilke's conduct in shooting Griffin to effect his arrest implicated a substantive constitutional guarantee. *See Tennessee v. Garner,* 105 S.Ct. at 1699–1707; *New,* 792 F.2d at 726. The existence of state remedies is irrelevant. *Wilson,* 801 F.2d 316, 321–22 (8th Cir.1986); *New,* 792 F.2d at 725–26.

**B. Improper Closing Argument.**

The police contend that the district court erred in overruling their objection to statements in Griffin's closing argument. They argue that they suffered prejudicial error because the argument both explicitly stated and implied that the government would be responsible for paying any judgment:

[Counsel for Griffin:] * * * When the police officer makes a careless, unprofessional judgment using his weapon, *he is the representative of the government and the government owes.* * * * Nobody, no jury can inflict mutilation as a punishment. Eric Griffin suffers mutilation. That is his punishment and we say when that happens, it deserves to be compensated. *When the government through its police officers —*

[Objection by counsel for police, which court overruled.]

\* \* \* \* \* \*

[Counsel for Griffin:] The thin blue line, as he calls, the thin blue line. There's a book by that title, by the way. The thin blue line. When the thin blue line crosses over the line and they go into your house as they did in one case called *Bibbins v. Six Unknown Agents* [sic] and they tear a house apart because they think there's narcotics in there and it

proves that they didn't think hard enough and they didn't find any, *by God the government owes those people to replace their house.* Or when they stop your car and rip out your dashboard because, well, they think but they haven't thought hard enough about it, by God *they owe you for that. They're obligated to repay* that. And nowhere is it more important, ladies and gentlemen, that when they think that they need to shoot, they have, quote, good reason to shoot but they don't know the actual rules and regulations about shooting, when they make a mistake, by God, *they owe for it.*

[Tr. 11/13 at 81–83. Emphasis supplied.][2]

■ Whether prejudice has resulted from a closing argument is a procedural question to be determined by federal law. *See Vanskike v. Union Pacific Railroad Co.*, 725 F.2d 1146, 1149 (8th Cir.1984). The district court is in a better position than the court of appeals to determine whether prejudice has resulted from a closing argument. Therefore, to constitute reversible error, statements made in closing argument must be plainly unwarranted and clearly injurious. We will not disturb the district court's evidentiary rulings during closing argument unless there has been an abuse of discretion. *Vanskike*, 725 F.2d at 1149.

■ The general rule in the state courts and under Fed.R.Civ.P. 61 is that interjection of the fact that the defendant is protected by insurance or other indemnity may be prejudicial error requiring reversal. *See Transit Casualty Co. v. Transamerica Insurance Co.*, 387 F.2d 1011, 1013 (8th Cir. 1967) (diversity case stating interjection of issue of reinsurance was prejudicial error under Rule 61 and Missouri law); *Halladay v. Verschoor*, 381 F.2d 100, 112 (8th Cir.1967) (diversity case citing numerous authorities); *see also Higgins v. Hicks Co.*,

756 F.2d 681, 684–85 (8th Cir.1985) (evidence of State of South Dakota's liability insurance not admissible under Fed.R.Evid. 411 to eliminate bias of jurors as taxpayers).

■ The reasoning behind this rule with regard to testimony or argument concerning the defendant's insurance or indemnity protection is that it will result in an unduly generous award of damages by the jury. *Transit Casualty*, 387 F.2d at 1013, *quoting Olian v. Olian*, 52 S.W.2d 673 (Mo.1933); *cf. Ouachita National Bank v. Tosco Corp.*, 686 F.2d 1291, 1301 (8th Cir.1982) (no prejudice because jurors already knew that defendant carried insurance), *aff'd* 716 F.2d 485, 488 (8th Cir.1983) (en banc). *Compare Eichel v. New York Central Railroad Co.*, 375 U.S. 253, 255, 84 S.Ct. 316, 317, 11 L.Ed.2d 307 (1963) (likelihood of misuse by jury outweighs value of evidence that plaintiff received disability payments). *See generally* Fed.R. Evid. 411 advisory committee's note. Similarly, in applying Missouri law, this court has held that references in closing argument to the wealth of defendant's parent corporation could constitute prejudicial argument. *Gearhart v. Union Corp. of America*, 781 F.2d 147, 153 (8th Cir.1986) (reversing on other grounds and instructing district court not to permit such remarks on retrial).

■ We hold that the district court's allowance of Griffin's counsel's closing remarks without special admonition or instruction to the jury constituted prejudicial error sufficient to require reversal. *See Halladay*, 381 F.2d at 112 (admonition or instruction to jury to ignore prejudicial statements may excuse allegedly prejudicial argument). Griffin's counsel repeatedly referred to the police as representatives of the government and explicitly stated twice that " * * * the government

---

**2.** The parties do not dispute that the police made a timely objection to the alleged prejudicial argument and raised the issue in their motion for judgment n.o.v., thus preserving the issue for review on appeal.

owes." In the context of the entire mosaic, these statements both explicitly and impliedly directed the jury that the police would not pay but their employer would.[3] The police do not cite any authority specifically holding that a closing argument which implies that the government will pay damages in a section 1983 case is prejudicial. We see no distinction between this and the injection of testimony or argument concerning insurance, however. We believe that the jury's apprehension that the government would be responsible for paying damages could result in an overly generous award of damages. Therefore, the district court committed prejudicial error requiring reversal of the judgment. *See Gearhart,* 781 F.2d at 153; *Transit Casualty,* 387 F.2d at 1013; *see also* Fed.R.Civ.P. 61.

### III. CONCLUSION.

We hold that the district court erred in denying the police's motion for judgment n.o.v. or a new trial based on (1) Griffin's failure to present evidence that Stoll was more than negligent; and (2) prejudicial statements during closing argument. We do not address Stoll's and Hilke's arguments concerning the defense of qualified immunity and application of comparative fault principles because these questions are not necessary to our decision. *See Hutchinson Utilities Commission v. Curtiss-Wright Corp.,* 775 F.2d 231, 238 (8th Cir. 1985). Accordingly, we reverse and remand this case to the district court for a new trial on both liability and damages regarding defendant Hilke, and dismiss this action with regard to defendant Stoll.

---

**3.** We note that under section 1983, the actions of a state entity's employees are attributed to the state entity itself if those actions are in furtherance of the entity's "policy or custom." *Pembaur v. City of Cincinnati,* — U.S. —, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986); *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Although Griffin joined both the City of St. Louis and the St. Louis Board of Police Commissioners as defendants, the district court record indicates that Griffin voluntarily dismissed them as defendants immediately before trial. It was therefore inappropriate for Griffin's counsel to refer to the city or the Board of Police Commissioners as responsible for payment of damages, because they were not parties to this action.

We do not decide today what the effect of a special admonition or curative instruction to the jury would have been. We hold only that Griffin's counsel's repeated references to "the government" as responsible for payment of damages, in the context of the closing argument in this case, constituted prejudicial error.