**Robert L. JACKSON, Appellee,**

v.

**Gary R. CREWS, A Fayetteville City Policeman, Appellant.**

**The City of Fayetteville, Arkansas, A Municipal Corporation.**

No. 88–1815.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1988.

Decided May 1, 1989.

Rehearing and Rehearing En Banc Denied July 13, 1989.

Don A. Smith, Fort Smith, Ark., for appellant.

Ronald G. Woodruff, Fayetteville, Ark., for appellee.

Before McMILLIAN and BEAM, Circuit Judges, and HARPER,* Senior District Judge.

McMILLIAN, Circuit Judge.

Gary R. Crews appeals from a final judgment entered in the District Court [1] for the Western District of Arkansas, upon a jury verdict in favor of the plaintiff, Robert L. Jackson, on Jackson's 42 U.S.C. § 1983

---

* The Honorable Roy W. Harper, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

complaint. The jury awarded Jackson $5,231.75 in compensatory damages and $50,000 in punitive damages; the district court awarded Jackson $15,907.50 in attorney's fees pursuant to 42 U.S.C. § 1988.

For reversal, Crews argues that (1) he was sued only in his official capacity and that, therefore, the district court erred in denying his motion for a directed verdict and his post trial motions, (2) the district court improperly instructed the jury, (3) the awards of both compensatory and punitive damages are contrary to the evidence and excessive, (4) the district court erred in allowing evidence of the contents of a written document without requiring production of the document, (5) the district court erred in not allowing impeachment of one of Jackson's witnesses, (6) the district court erred in awarding $15,907.50 in attorney fees, and (7) his right to a fair trial was undermined by juror misconduct. For the reasons discussed below, we affirm the decision of the district court.

On the night of March 8, 1987, Jackson was arrested by Crews, a Fayetteville city policeman. Crews removed Jackson from a movie theater where Jackson had become sick because he was intoxicated. Outside the theater, Jackson apparently tried to run away from Crews, but Crews caught up with Jackson in a parking lot. Both men fell to the ground. Crews handcuffed Jackson and then slammed Jackson's face into the pavement. Jackson was arrested and charged with public intoxication and resisting arrest.

At the conclusion of all of the evidence the district court granted a directed verdict for the City of Fayetteville, but denied Crews' motion for a directed verdict. The jury returned a verdict against Crews in his individual capacity. This appeal followed.

## INDIVIDUAL CAPACITY SUIT

■ Crews argues that he was sued only in his official capacity as a City of Fayetteville police officer and that the district court therefore erred in denying his motion for directed verdict. The caption of the case in the district court read *"Robert L. Jackson v. Gary R. Crews, A Fayetteville City Policeman, and the City of Fayetteville, Arkansas, A Municipal Corporation."* Jackson argues that the construction of the pleading offered by Crews would make the second part of the caption a meaningless redundancy. He further argues that the first cause of action in his complaint makes it clear that Crews was being sued in his individual capacity.

■ We agree that the language of the complaint is sufficiently clear in this case to have given Crews notice that he was being sued in his individual capacity. We caution future § 1983 litigants, however, that it would be much better for them to clearly indicate both the parties being sued and their capacity in the caption. As we have previously stated:

> In pleading a cause of action against municipal officials, a plaintiff must allege that defendants committed acts "under the color of law." If plaintiff wishes to sue defendants in both capacities, the following language would suffice: Plaintiff sues each and all defendants in both their individual and official capacities.

*Rollins v. Farmer*, 731 F.2d 533, 536 n. 3 (8th Cir.1984) (citation omitted).

## JURY INSTRUCTIONS

Crews argues that the district court erred in (1) instructing the jury regarding the elements of excessive force, (2) instructing the jury on the factors to be considered in determining whether Jackson's constitutional rights had been violated, (3) instructing the jury that it could return a verdict for nominal damages if Jackson failed to prove actual damages, (4) failing to instruct the jury regarding the determination of a constitutional violation in a swiftly developing situation, and (5) failing to instruct the jury that Jackson had an affirmative duty to submit to arrest by a law enforcement officer.

### Elements of Excessive Force

■ Instruction number six stated in part that Jackson must prove by a preponderance of the evidence that "Crews used unreasonable force or the threat of unreasonable force on the plaintiff to make an arrest." Record at 475. Crews argues

that the district court erred in so charging the jury because a "threat of unreasonable force" was not an issue in this case. Further, Crews argues that instruction number six conflicts with instruction number eleven which stated that "an officer is justified in using deadly physical force when he reasonably believes it necessary to effect an arrest." Record at 479.

Instruction six properly states the elements of excessive force. There was testimony to the effect that Crews threatened at one point to break Jackson's neck, making the threat of excessive force an issue in this case. Moreover, we see no conflict between instructions six and eleven. We therefore hold that the district court properly instructed the jury concerning Jackson's burden of proving excessive force.

### Elements of Constitutional Rights

■ Crews argues that the district court erred in jury instruction thirteen by omitting certain language from the instruction. Instruction thirteen stated the four factors a jury should consider in determining whether a constitutional violation has occurred as set forth in *Davis v. Forrest*, 768 F.2d 257 (8th Cir.1985) (*Davis*). However, the district court did not add language to the effect that police officers must intrude into " 'realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as to literally shock the conscience,' " *id.* at 258, before a constitutional violation could be found.

Jackson argues that the "shock the conscience" language is not required by *Davis*. We agree. Instruction thirteen properly instructed the jury that it must consider the need for the application of force by Crews, the relationship between the need and the amount of force used by Crews, the extent of injury inflicted upon Jackson by Crews, and whether any force applied by Crews was applied in good faith or maliciously and sadistically for the very purpose of causing harm to Jackson. Record at 480.

*Davis* held that the "shock the conscience" language used by the district court in that case did not constitute reversible error. *Davis* at 258. However, the *Davis* holding falls short of requiring a fifth element of consideration before a jury can determine that a plaintiff's constitutional right has been violated. We hold that instruction number thirteen was properly submitted to the jury without the additional language suggested by Crews.

### Nominal Damages

Crews argues that instruction eighteen is improper. Instruction eighteen advised the jury that if it returned a verdict for Jackson but failed to find actual damages, the jury could award nominal damages not to exceed one dollar. Because the jury awarded actual damages to Jackson, we need not address this issue.

### Swiftly Developing Situation

■ Crews argues that the district court erred in failing to instruct the jury that it should consider whether Crews was acting in a swiftly developing situation. Crews cites *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (*Sharpe*). *Sharpe* held that in determining whether an investigative stop lasting approximately fifteen minutes was reasonable, a court "should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *Id.* at 686, 105 S.Ct. at 1575.

In refusing to give this instruction the district court recognized a critical distinction between an alleged constitutional violation based on an unreasonable search and seizure and one based on use of excessive force. Even though the reasonableness of the length of an investigative stop may vary with the facts in given cases, the use of excessive force is never reasonable. Therefore, even if there had been evidence that Crews was caught up in a "swiftly developing situation," the jury should only have considered such evidence in determining the amount of force necessary to effect the arrest of Jackson. Instruction thirteen directed the jury to consider the relationship between the need for the application of force by Crews and the amount of force actually used. The proposed instruction would have been redundant.

The district court properly refused to instruct the jury that it should consider whether Crews was acting in a swiftly developing situation.

Affirmative Duty to Submit to Arrest

■ Finally, Crews argues that the district court erred in failing to instruct the jury that Jackson had an affirmative duty to submit to arrest by a police officer. We disagree. The testimony in this case clearly established that Jackson had attempted to flee before he was subdued by Crews. That fact, however, did not give Crews the right to use excessive force. This is a civil case. As such, an instruction to the jury that one has a duty to submit to lawful arrest is plainly irrelevant to the issue of whether the officer used excessive force in effecting the arrest.

For these reasons, we hold that the district court's instructions to the jury were proper.

## DAMAGES AND ATTORNEY FEES

### Compensatory Damages Award

■ Crews argues that the jury's award of $5,231.75 in compensatory damages is excessive because Jackson's actual out-of-pocket medical expenses totaled only $231.75. Crews relies on *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) (*Stachura*). *Stachura* held that an instruction charging the jury that compensatory damages in a § 1983 case "could be awarded based on the value or importance of the constitutional rights that were violated," *id.* at 302, 106 S.Ct. at 2540, was improper because "damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of *compensatory* damages in such cases." *Id.* at 310, 106 S.Ct. at 2545 (emphasis added). Crews argues that the additional $5,000 award to Jackson must have been based on the jury's perceived value of the violation of an abstract constitutional right. We disagree.

■ Compensatory damages have never been limited to out-of-pocket expenses. As the Court in *Stachura* recognized, "compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation ..., personal humiliation, and mental anguish and suffering.'" *Id.* at 307, 106 S.Ct. at 2543. In the instant case there was also ample evidence of physical pain and suffering to support the verdict. We hold that the jury's award of compensatory damages is supported by the evidence in this case and was not made under the influence of passion or prejudice.

### Punitive Damages Award

■ Crews argues that the jury's award of $50,000 in punitive damages is improper because he was only sued in his official capacity and because it is excessive. We have already determined that Crews was sued in his individual capacity, *see* discussion above p. 1107. Moreover, "[t]he amount of the punitive award lies in the discretion of the jury and may only be disturbed when it appears, in the judgment of the reviewing court, to be unfair and shocking." *Guzman v. Western State Bank*, 540 F.2d 948 (8th Cir.1976) (citations omitted). We hold that the jury's award of punitive damages is neither unfair nor shocking and must therefore be affirmed.

### Attorney's Fees

■ Title 42 U.S.C. § 1988 provides that in federal civil rights actions a district court may, in its discretion, award the prevailing party reasonable attorney's fees as part of the costs.

Crews argues that the district court's award of $15,907.50 in attorney's fees is excessive because Jackson had pled $50,000 in compensatory damages but only received $5,231.75. Crews argues that the holding in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (*Hensley*) compels the district court to lower the amount of attorney's fees awarded to correlate with the degree of success obtained by Jackson. We disagree.

*Hensley* held that where a plaintiff fails on a civil rights claim unrelated to the successful claims, the value of the hours spent on the unsuccessful claim should be excluded from the awarded fee. *Id.* at 440,

103 S.Ct. at 1943. Jackson, however, succeeded on the only claim he brought and received both compensatory and punitive damages. Therefore, the holding in *Hensley* does not apply to the instant case. Moreover, *City of Riverside v. Rivera*, 477 U.S. 561, 578, 106 S.Ct. 2686, 2696, 91 L.Ed. 2d 466 (1986) specifically rejected the "rule of proportionality" that Crews states as law:

> A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting § 1988.

We hold that the district court did not abuse its discretion in the award of attorney's fees to Jackson.

## PRODUCTION OF DOCUMENT

 Crews argues that the district court erred in allowing Jackson to question one of his own witnesses about the contents of a flyer without producing the flyer as the best evidence of its contents pursuant to Fed.R.Evid. 1002. The flyer described Jackson's arrest and asked any eyewitnesses to contact the person named on the flyer. Jackson was attempting to show how the witness learned of the case and came to testify.

Fed.R.Evid. 1002 provides that "[t]o prove the contents of a writing, ... the original writing ... is required, except as otherwise provided in these rules or by Act of Congress."

 This rule only applies if the party offering the evidence is seeking to prove the contents of the writing. Fed.R.Evid. 1002 note. In the instant case Jackson was not trying to prove the contents of the flyer. Therefore, Fed.R.Evid. 1002 does not apply. Even if Jackson had been trying to prove the content of the flyer, he would have been exempted from producing the flyer because the issue was collateral to the principal issue in the trial. *See* Fed.R.Evid. 1004(4).

## IMPEACHMENT OF WITNESS

 Crews argues that he was improperly prevented from impeaching one of Jackson's witnesses. Counsel asked the witness whether he had ever been arrested by the Fayetteville Police Department. The witness said he could not recall. Counsel then asked whether the witness had ever been arrested by the Washington County Sheriff's office. The witness answered yes. Upon plaintiff's objection to relevancy, counsel answered "It's relevant because of attitude toward police." Record at 287. The district court sustained the objection and counsel asked to make an offer of proof.

Crews now argues that the district court improperly prevented him from impeaching the witness with evidence of conviction of a crime involving dishonesty or false statement pursuant to Fed.R.Evid. 609(a)(2). However, in his offer of proof, Crews argued only that, had he been allowed to pursue the line of questioning, the witness would have eventually admitted to having been arrested by the Fayetteville Police Department. It was evidence of previous arrests that the district court found irrelevant. We agree.

Fed.R.Evid. 609(a)(2) provides that the credibility of a witness may be attacked with evidence of conviction of a crime if the evidence is established by public record or elicited from the witness and the crime "involved dishonesty or false statement." No where do the rules of evidence allow a witness's credibility to be attacked by evidence of a previous arrest. In the instant case, Crews failed to state in his offer of proof that he could prove the witness had prior convictions of crimes involving dishonesty or false statement. Therefore the district court properly refused to permit Crews to impeach the witness with evidence of prior arrests.

## JUROR MISCONDUCT

Crews argues that his right to a fair trial was violated because one of the jurors during voir dire failed to answer that he had attended high school some thirty years before with both counsel for Jackson and counsel for the City of Fayetteville. The

same juror failed to tell the district court that his brother-in-law had been arrested six times by Fayetteville police. Crews argues that he was prejudiced by these omissions. We disagree.

First, there is no way of knowing whether the juror in question remembered having attended the same school with the two attorneys. Moreover, several jurors who acknowledged having far closer ties with either potential witnesses or attorneys were nevertheless not discharged from jury duty. For that reason, Crews' argument that he was prejudiced by the omission is simply not credible.

In our examination of the record in this case we find no question that would have elicited from the juror information that his brother-in-law had been arrested six times by the Fayetteville police. The jurors were asked if they or any members of their families or close friends "have ever been treated rudely or roughly by a law enforcement officer." Record at 23. Surely Crews does not mean to suggest that the brother-in-law must have been "treated rudely or roughly" given that he had been arrested six times. Therefore, Crews' argument that he was prejudiced by juror misconduct amounts to nothing more than idle speculation.

Accordingly, the judgment of the district court is affirmed.