# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1487

_____

Paul A. Billingsley,                            *
                                                *
      Plaintiff-Appellant,                     *
                                                *   Appeal from the United States
    v.                                           *   District Court for the
                                                *   District of Nebraska.
City of Omaha, a municipal corpora-             *
tion; Fred Pfeffer, in his capacity as a        *
police officer employed by the City of          *
Omaha and as an individual,                     *
                                                *
      Defendants-Appellees.                    *

_____

Submitted: November 12, 2001
Filed: January 17, 2002

_____

Before LOKEN, LAY, and HEANEY, Circuit Judges.

_____

LAY, Circuit Judge.

Paul Billingsley filed a complaint, pursuant to 42 U.S.C. § 1983, alleging an Omaha police officer, Fred Pfeffer, used excessive force in effecting his arrest. The complaint included a claim against the City of Omaha, alleging Officer Pfeffer's use of excessive force resulted from the City's failure to train, supervise, and discipline

him. The district court[1] bifurcated the claims. The excessive force claim against Officer Pfeffer was tried before a jury and a verdict was returned in favor of Pfeffer. Billingsley, thereafter, filed a timely motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 and combined therewith a motion for a new trial pursuant to Fed. R. Civ. P. 59. The district court denied Billingsley's motion on both counts. Billingsley subsequently filed the present appeal. We now affirm.

## Facts

At around 6:00 P.M. on June 23, 1996, Officer Pfeffer was off-duty and at his home. His wife, Sally, noticed a man, later found to be Paul Billingsley, cross the street and attempt to enter their front yard. Billingsley's progress was impeded by bushes abutting the front yard. Billingsley then proceeded down the sidewalk, down a neighbor's driveway and in between some houses. Sally informed her husband of the foregoing events. Officer Pfeffer directed his attention to Billingsley and observed him walking between the houses.

Pfeffer went outside and watched Billingsley attempt to enter two different neighbors' homes through the back door, but was rebuffed because they were locked. Pfeffer instructed his wife to call 911. He retrieved his service revolver and proceeded outside. Billingsley crossed the neighbor's yard and eventually came to and entered the home of the Machals.

Pfeffer waited for police back-up to arrive, but finally decided to enter the Machals' home, tracing Billingsley's method of entrance. Once inside, Pfeffer reached an area where the staircase lead to an upper level of the home and saw Gary

---

[1]The Honorable Thomas M. Shanahan, United States District Court Judge for the District of Nebraska, presiding.

Machal at the top of the stairs.  They heard a noise emanating from the upstairs and investigated.

Officer Pfeffer, with his service revolver drawn, informed Billingsley he was a police officer, to halt, and put his hands up.  Billingsley had a purse in his left hand, but Pfeffer could not observe his right hand.  Despite Officer Pfeffer's warning, Billingsley stepped to the side and ran out the back door onto the deck.  He jumped over the deck railing onto the ground, which was some fifteen feet below.  Pfeffer ran to the railing with his gun drawn and repeated the earlier warning.  Billingsley landed in a crouched position and then rotated his left shoulder.  Officer Pfeffer fired a shot that struck Billingsley in the lower right back and exited out his groin.  Billingsley was found to be unarmed.

## I.  Motion for Judgment as a Matter of Law

The first issue on appeal is whether sufficient evidence exists to support the jury's finding that Officer Pfeffer had probable cause of an immediate threat of death or serious bodily injury when he shot Billingsley.  This court reviews de novo a district court's denial of a motion for judgment as a matter of law.  E.E.O.C. v. HBE Corp., 135 F.3d 543, 554 (8th Cir. 1998); Deneen v. Northwest Airlines, Inc., 132 F.3d 431, 435 (8th Cir. 1998).  The evidence is considered in the light most favorable to the non-moving party.  EFCO Corp. v. Symons Corp., 219 F.3d 734, 738 (8th Cir. 2000).

When considering a motion for judgment as a matter of law, it is an "invasion of the jury's historic function for an appellate court to weigh the conflicting evidence, judge the credibility of witnesses and arrive at a conclusion opposite from the one reached by the jury."  Lavender v. Kurn, 327 U.S. 645, 652-53 (1946); Estwick v. City of Omaha, 9 F.3d 56, 59-60 (8th Cir. 1993) (stating it is the duty of the jury to resolve conflicting testimony).  Rather, the function of this court's review is

exhausted when the evidentiary basis of the verdict becomes apparent, even though the court might draw a contrary inference or feel another conclusion is more reasonable. Basham v. Pennsylvania R. Co., 372 U.S. 699, 700 (1963). As a result, this court will not reverse a jury verdict for insufficient evidence unless no reasonable juror could have returned a verdict for the non-moving party. Denesha v. Farmers Ins. Exchange, 161 F.3d 491, 497 (8th Cir. 1998); see also Gardner v. Buerger, 82 F.3d 248, 251 (8th Cir. 1996) ("This demanding standard reflects our concern that, if misused, judgment as a matter of law can invade the jury's rightful province.").

A § 1983 claim for apprehension by force, deadly or not, constitutes a seizure subject to the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989); Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). Whether a seizure occurred is not at issue. Rather, the inquiry is whether the seizure by deadly force was objectively reasonable pursuant to the dictates of the Fourth Amendment. Graham, 490 U.S. at 395; Tennessee v. Garner, 471 U.S. 1, 7 (1985); Kreuger v. Fuhr, 991 F.2d 435, 438 (8th Cir. 1993). The Supreme Court has observed:

> "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

Graham, 490 U.S. at 396 (quoting Bell v. Wolfish, 441 U.S. 520, 529 (1979)). In short, the objective reasonableness test examines whether the totality of the particular circumstance justifies the seizure by deadly force. Id.; Garner, 471 U.S. at 8-9. In Garner, the Supreme Court established, absent probable cause of an immediate threat of death or serious bodily injury, use of deadly force is not objectively reasonable. Garner, 471 U.S. at 9.

-4-

The aforementioned reasonableness of force is judged from the perspective of the officer on the scene, taking into consideration the facts known to him, as opposed to one possessing the illuminating power of hindsight. Nelson v. County of Wright, 162 F.3d 986, 989 (8th Cir. 1998).

At issue in the present case is the interaction between Officer Pfeffer and Billingsley prior to the shooting. Officer Pfeffer informed Billingsley three times he was a police officer and to halt. Billingsley had a purse in his left hand. Officer Pfeffer did not observe his right hand. Billingsley did not halt, rather, he fled out of the room onto the deck. Upon reaching the deck, Officer Pfeffer issued another warning. Billingsley then leapt off the deck onto the ground, fifteen feet below. As Billingsley landed, he turned and rotated his shoulder. It was at that time Officer Pfeffer shot him. At no time did the officer observe a weapon and when apprehended, Billingsley was found to be unarmed.

The holding in Garner has been applied by this circuit as well as other circuits in circumstances similar to the one presented. In Thompson v. Hubbard, 257 F.3d 896 (8th Cir. 2001), the heirs of a suspected armed robber brought a § 1983 claim against a police officer for his wrongful death. In responding to an armed robbery, Thompson was chased by a police officer. Id. at 898. The chase ended when Thompson ran between two buildings and climbed over a short fence. Id. The police officer testified that "Thompson got up from the ground, looked over his shoulder . . . and moved his arms as though reaching for a weapon at waist level." Id. The police officer fired a single shot, which killed the alleged robber. Id. No weapon was found on the victim's person. Id. In addressing the fact that the alleged robber was unarmed, the court noted "[a]n officer is not constitutionally required to wait until he sets eyes upon the weapon before employing deadly force to protect himself against a fleeing suspect who turns and moves as though to draw a gun." Id. at 899. Moreover, the court held if "Thompson turned and looked at him while the two were in close proximity and moved as though reaching for a weapon . . ." a jury could not

conclude that the officer's use of deadly force was objectively unreasonable. Id. Thus, the appellate court upheld the district court's grant of summary judgment.

Other circuits have come to the same conclusion in similar situations. In Ryder v. City of Topeka, 814 F.2d 1412 (10th Cir. 1987), the plaintiff, Ryder, appealed a denial of a motion for judgment as a matter of law. The defendant police officer had received information that armed burglars were to rob a business. Id. at 1414. The officers staked out the business and attempted to apprehend the burglars as they entered. Id. at 1415. Ryder fled down a darkened alley with her hands in her pocket, the officer was in pursuit. Id. at 1416. The officer shot Ryder, whom he later learned to be an unarmed fourteen-year-old girl. Id. The Tenth Circuit affirmed the district court's denial of judgment as a matter of law, holding that, due in part to the officer's inability to see Ryder's hands, "a jury could infer that [the police officer] had probable cause to believe that the suspect he was chasing down the darkened alley was both armed and prone to violence." Id. at 1421.

In Reese v. Anderson, 926 F.2d 494 (5th Cir. 1991), the district court denied Officer Anderson's request for summary judgment based upon a deadly force claim made by the heirs of a robbery suspect, Crawford. Id. 496. Crawford was the passenger in a vehicle that had lead the officers on a high speed chase. Id. A number of officers finally stopped the car and Officer Anderson approached, ordering the two occupants to raise their hands. Id. at 500. Crawford did not comply, reaching down repeatedly. Id. Finally, "Crawford tipped his shoulder and reached further down" and Officer Anderson shot him. Id. at 501. The Fifth Circuit found that "[Officer Anderson] could reasonably believe that Crawford had retrieved a gun and was about to shoot" even though Crawford was actually unarmed. Id. Thus, the court reversed the district court's denial of summary judgment because Anderson's "shooting of Crawford was reasonable and not excessive." Id. at 500.

The facts of the present dispute comport with rulings in <u>Thompson</u>, <u>Ryder</u> and <u>Reese</u>. Although Billingsley was found to be unarmed, a police officer can still employ deadly force if objectively reasonable. <u>See</u> <u>Thompson</u>, 257 F.3d at 899; <u>Ryder</u>, 814 F.2d at 1417; <u>Reese</u>, 926 F.2d at 501. Further, the jury could properly draw the inference of an immediate threat of death or serious bodily harm to Officer Pfeffer from his inability to observe Billingsley's hand and his shoulder movement. <u>See</u> <u>Thompson</u>, 257 F.3d at 899; <u>Ryder</u>, 814 F.2d at 1421; <u>Reese</u>, 926 F.2d at 501. Therefore, probable cause for the use of deadly force is satisfied by the immediate threat of death or serious bodily harm, as observed through the Fourth Amendment prism of objective reasonableness. <u>See</u> <u>Garner</u>, 471 U.S. at 9

This conclusion is further supported by the procedural posture of the case; a court will not grant a motion for judgment as a matter of law unless no reasonable juror could have returned a verdict for the non-moving party. <u>Denesha</u>, 161 F.3d at 497. This court cannot say no reasonable juror could return a verdict for Officer Pfeffer in light of the procedural posture of the analogous decisions in <u>Thompson</u> and <u>Reese</u>; both courts found for the police officer on motions for summary judgment. <u>See</u> <u>Thompson</u>, 257 F.3d at 898-99 (affirming district court's grant of summary judgment for the officer because evidence was so one-sided that it need not be presented to the jury); <u>Reese</u>, 926 F.2d at 501 (overruling the district court's denial of officer's motion for summary judgment because there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law). Therefore, we affirm the district court's denial of Billingsley's motion for judgment as a matter of law.

## II. Jury Instruction

Billingsley argues the district court erroneously instructed the jury.[2]  He contends the court improperly instructed the jury on the claim of excessive force by submitting the following instruction, which is found in the Eighth Circuit Model Jury Instruction (Civil) 4.10 (1998):

> In determining whether such force, was "not reasonably necessary," you must consider such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether a reasonable officer on the scene, without the benefit of 20/20 hindsight, would have used such force under similar circumstances.  [The jury must consider that police officers are often forced to make judgments about the amount of force that is necessary in circumstances that are tense, uncertain and rapidly evolving.]  (footnotes omitted).

Billingsley cites Jackson v. Crews, 873 F.2d 1105 (8th Cir. 1989), in support of the claim that the instruction was erroneous.  In Jackson, the district court refused to instruct the jury to consider whether the officer was acting in a swiftly developing situation.  Id. at 1108.  The court of appeals affirmed on the basis that the instruction would be redundant since the jury was already charged with "determining the amount of force necessary to effect the arrest of [the plaintiff.]"  Id.

An appellate court reviews a district court's jury instructions for an abuse of discretion.  Thomlinson v. City of Omaha, 63 F.3d 786, 790-91 (8th Cir. 1995).  The seeds of the jury instruction language at issue were sown in Garner.  The Court

---

[2]Instructions were submitted to the jury as to the use of excessive force and deadly force.  See Graham, 490 U.S. at 395.  Neither party objected.  Although the inclusion of both instructions was improper and created confusion, it does not constitute plain error.  See Rush v. Smith, 56 F.3d 918, 922 (8th Cir. 1995) (en banc) (holding where a party fails to lodge a timely objection, court reviews for plain error).

acknowledged the rule adopted does not "require[] the police to make impossible, split-second evaluations of unknowable facts." Garner, 471 U.S. at 20. The language of this circuit's model jury instruction emanates directly from Graham, the progeny of Garner. Graham, 490 U.S. at 396-97 ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.") (internal citations omitted). This circuit has oft cited this language when reciting the test for objective reasonableness under the Fourth Amendment. See, e.g., Lawson v. Hulm, 223 F.3d 831, 834 (8th Cir. 2000); Krueger, 991 F.2d at 438-39; see also Sherrod v. Berry, 856 F.2d 802, 805 (7th Cir. 1988) (sitting en banc, the Seventh Circuit held that "absent a constitutional violation, appellate judges would be well advised not to second-guess an officer's split-second reasonable judgment to protect himself and those around him through the use of deadly force; rather, courts and juries must determine the propriety of the officer's actions based upon a thorough review of the knowledge, facts and circumstances known to the officer at the time he exercised his split-second judgment . . . .").

The objective reasonableness test of the Fourth Amendment takes into account, albeit not as directly as a specific charge, the demanding circumstances under which an officer is operating. See Graham, 490 U.S. at 396; Garner, 471 U.S. at 8-9. A prior determination by this court that the district court did not err by not instructing the jury as to the swiftly developing situation does not preclude the district court from offering a similar instruction to the jury. See Jackson, 873 F.2d at 1108 (stating that a prior determination by this court that language used in the jury instruction did not constitute reversible error falls short of requiring its consideration before the jury in the present dispute). Thus, whether additional comment is required as to the circumstances in which the officer is operating in beyond the factors set forth in

Garner and Graham is a matter that lies within the discretion of the district court. See Thomlinson, 63 F.3d at 790-91. In conclusion, we hold the district court did not abuse its discretion by including the instruction.

Notwithstanding our approval of the district court's submission of the instruction to the jury, we express some concern with regard to the following language contained in the instruction:

> The jury must consider that police officers are often forced to make judgments about the amount of force that is necessary in circumstances that are tense, uncertain and rapidly evolving.

Eighth Circuit Model Jury Instruction (Civil) 4.10 (1998). The language is superfluous in light of the preceding language that instructs the jury "in determining whether such force was 'not reasonably necessary,' you must consider such factors . . . ." In repeating[3] a directive already charged to the jury, an appearance of imbalance is created and lends possible misleading emphasis to the jury. Although we find no error, due in part to the considerable discretion afforded to the district court to comment on the evidence, see e.g., Jack B. Weinstein & Margaret A. Berger, Weinstein Federal Evidence § 107 (2nd ed. 2001), we suggest district courts should avoid similar language when it is repetitious, as it is here, in instructing jurors in cases in the future.

---

[3]The questionable language, as set forth, supra, appears in a parenthesis in the Model Jury Instruction at n.9 which says "add this phrase if appropriate. See Graham v. Connor, 490 U.S. 386 (1989)." Our concern is that it is repetitious and therefore creates an imbalance in the overall instruction.

## III. Improper Closing Remarks

Billingsley identifies three statements made by Pfeffer's counsel during closing arguments that he contends warrant a new trial. First, "It may have turned out that he didn't have a gun, but wasn't he asking for some type of confrontation?" Second, "Mr. Billingsley put himself in harm's way. He acted in a way that precipitated fear, that precipitated uncertainty, and that precipitated the result that he received, which unfortunately was a shot." Finally, "The Fourth Amendment is intended to protect people from unreasonable—unreasonable—seizures, searches, and excessive force. Mr. Machal has no protection under the Fourth Amendment for what Mr. Billingsley did to him—."

This court examines the district court's ruling on closing arguments for an abuse of discretion because of its superior vantage in which to judge prejudice. Griffin v. Hilke, 804 F.2d 1052, 1057 (8th Cir. 1986); Harris v. Steelweld Equip. Co., Inc., 869 F.2d 396, 404-05 (8th Cir. 1989). A new trial should be granted where the improper conduct of counsel in closing argument are "plainly unwarranted and clearly injurious." Griffin, 804 F.2d at 1057. A failure to object to statements made during closing argument waives such an objection. Williams v. Butler, 746 F.2d 431, 443 (8th Cir. 1984); see also Lange v. Schulz, 627 F.2d 122, 127 (8th Cir. 1980) ("Only in extraordinary situations, in order to prevent a 'plain miscarriage of justice,' will a reviewing court reverse a judgment based upon errors not objected to at trial.").

Billingsley failed to object to the first two alleged improper statements. Thus, the present objection as to the two statements cannot stand. See Williams, 746 F.2d at 443; Lange, 627 F.2d at 127. Regardless, none of the comments are "plainly unwarranted and clearly injurious," therefore, a new trial is not warranted. See Griffin, 804 F.2d at 1057. Moreover, the district court admonished the jury, at the beginning of trial and prior to the closing arguments, that statements made by the attorneys are not evidence. The admonition remedied any prejudice incurred by

-11-

Billingsley.  See Halladay v. Verschoor, 381 F.2d 100, 112 (8th Cir. 1967) (admonition the jury to disregard prejudicial statements may excuse allegedly prejudicial argument); United States v. O'Connell, 841 F.2d 1408, 1430 (8th Cir. 1988) (find the district court cured any prejudicial effect that prosecutor's statements in closing arguments may have had by admonishment to the jury).  Therefore, the statements made by Pfeffer's counsel during closing arguments do not warrant the grant of a new trial.

Judgment AFFIRMED.

LOKEN, Circuit Judge, concurring.

In Graham v. Connor, 490 U.S. 386 (1989), the Supreme Court stated:  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Id. at 396-97 (emphasis added).  The committee notes to Eighth Circuit Model Jury Instruction (Civil) 4.10 (2001) advise district judges to incorporate that language in excessive force jury instructions when appropriate.  Surely, that is sound advice.  Accordingly, I do not join the court's suggestion that "district courts should avoid" incorporating the Supreme Court's above-quoted mandate in their jury instructions.  Ante p.10.  I would leave the question to their discretion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-12-