ILLINOIS CENTRAL RAILROAD COM-
PANY, Appellant,

v.

Arlene Delores STAPLES, a Minor, etc.,
Appellee.

No. 16296.

United States Court of Appeals
Eighth Circuit.

Dec. 23, 1959.

Arnot L. Sheppard, St. Louis, Mo., made argument for appellant.

Robert E. Morley, St. Louis, Mo., made argument for appellee.

Before GARDNER, WOODROUGH, and VOGEL, Circuit Judges.

GARDNER, Circuit Judge.

This was an action brought by appellee against appellant to recover damages for personal injuries suffered by her while she was a passenger on one of appellant's trains en route from St. Louis, Missouri to Memphis, Tennessee. We shall refer to the parties as they were designated in the trial court.

Plaintiff alleged no specific act of negligence but submitted her right to recover on a general allegation of negligence, thus invoking the doctrine of res ipsa loquitur. Defendant answered, denying all acts of negligence.

The accident which caused plaintiff's injuries resulted from the derailment and wreck of one of defendant's passenger trains in which she was being transported. The wreck occurred on a portion of track referred to in the evidence as a "run-around track." This "run-around track" was a curved track leading away from defendant's main track and again connecting with the main track at an undisclosed distance, and was installed on a new grade built by the State of Illinois in order to facilitate the building of a new public highway under the track of defendant. The construc-

tion of this highway necessitated cutting through the established railroad grade of defendant and the building of a railroad bridge over the opening thus made through the railroad grade. During the construction of the highway under the defendant's track, defendant's trains were routed over this so-called "run-around track," thus diverting the traffic from its regular line and enabling it to continue running its trains while the public highway was under construction under its main track and a railroad bridge was being built to permit the traffic to pass over defendant's own regular line. The grade for this "run-around track" was built by the State of Illinois but the ballast, ties, and rails connecting with and leading from defendant's main track and again connecting therewith were built and installed by the defendant. The length of the "run-around track" is not shown by the testimony; neither does it appear how long it had been in use at the time of the accident in question.

This accident happened sometime after midnight while plaintiff was seated with a companion on the left side of the coach. She had been reading and had dozed off to sleep when the wreck occurred and the car turned over on its side. There is nothing in the record to show the number of cars in the train, the rate of speed at which it was moving, nor the condition of the equipment following the derailment. There was testimony of defendant's Division Engineer as to the physical facts as he observed them following the wreck, but the testimony was confined to the condition of the track and roadbed, with no testimony as to the condition of the wrecked train. On cross-examination he was interrogated and answered, with reference to the speed of the train, as follows:

"Q. You, of course, don't know anything about, from your own knowledge, the speed involved on this occasion, do you? A. No."

In addition to plaintiff's testimony as to her injuries and condition of health,

there was medical testimony both on behalf of plaintiff and on behalf of defendant. We shall have occasion to further develop the testimony.

At the close of all of the testimony defendant moved for a directed verdict in its favor, which motion was denied and the case was submitted to the jury on instructions to which defendant saved certain exceptions hereinafter to be considered. The jury returned a verdict in favor of the plaintiff for $5,000.00, pursuant to which the court entered judgment. Defendant did not move for judgment notwithstanding the verdict but instead moved for a new trial, which the court denied, and this appeal followed.

■ Defendant seeks reversal on two grounds, (1) that the court erred in giving to the jury the following instruction:

"In determining the amount of damages you will award the plaintiff, you may take into consideration * * * (4) such impairment, if any, of plaintiff's ability to work and to labor after reaching the age of twenty-one years as you find from the evidence plaintiff is reasonably certain to suffer."

and, (2) that the court erred in permitting plaintiff's counsel, in his opening argument to the jury, to tell them that defendant's failure to proffer as witnesses the members of the train crew warranted the inference that had they testified their evidence would have been hurtful to defendant.

Counsel for defendant, in its brief, concedes that plaintiff made out a prima facie case entitling her to go to the jury, but contends that the evidence was insufficient to warrant the giving of the instruction as to her right to recover for the diminution of her ability to work and labor after reaching the age of twenty-one years. As we construe defendant's contention, it concedes plaintiff's right to recover for all damages she may have suffered by reason of her injuries, except damages for diminution of her ability to work and labor after reaching the age of twenty-one years. The contention that she was not entitled to recover for diminution of her earning capacity after reaching the age of twenty-one years is based upon the claim that her injuries were not permanent and that she had not shown that she had earning capacity. At the time of the accident plaintiff was a minor of the age of sixteen years.

As the jury found the issues in favor of the plaintiff, we must view the evidence in a light most favorable to her as the prevailing party, and we must assume that all conflicts in the evidence were resolved in her favor. She is also entitled to the benefit of all such favorable inferences as may reasonably be drawn from the evidence.

Plaintiff testified with reference to her injuries and condition following the accident to the effect that prior to this occurrence she had had headaches once in a while but that now she has them frequently. The headaches which she had prior to the occurrence were always only mild headaches but now they are worse and when they occur she has to sit down or lie down because they are very bad and usually last all day. The headaches occur about three times per week. Taking aspirins for these headaches does not help them. She testified further that she now has trouble with her back when she lifts something or bends over too far. She suffers from dizziness sometimes when she bends over or jerks her head around. Dr. C. M. Turner testified as to the character and extent of her injuries, among other things, that:

"In my opinion, the patient sustained a cerebral concussion, a sprain of the lower back, she had contusions, lacerations, and abrasions of the forehead, with a small hematoma formation over the sutured lacerated area. She had contusions and abrasions of the abdominal wall, the lower and upper extremities, a sprain of the right ankle, she had sutured lacerated

wounds of the right thumb and right finger. * * * I put her on bed rest with a taking of blood pressure and pulse until it stablized to a constant degree. I advised her as to how to use bed support, that is, a modified Bradford bed, that is a back support that is a hard board underneath the bed so as to give some counter support to the back to ease the pain, I strapped the back, gave her diathermy treatment, more or less, tried to reassure her that she would get along all right eventually and just treated her symptomatically for her complaints. She had headaches, I gave her medication for that, and other treatment as symptomatic. She was kept on bed rest for some two weeks until the symptoms cleared somewhat. After which she had interval heat treatments, analgesics, and supportive therapy with continued strapping of the back. * * *

"Q. Doctor, assuming that Arlene Staples was a girl sixteen years of age on December 21st, 1956, that she was involved in a train accident, where the coach in which she was riding was thrown over on its side, that she was cut as she was when you found her, that she had a period of unconsciousness, that she also was in such a state that she had to be carried from the coach and taken to a hospital, and take into consideration your findings the next day, and take into consideration the history of her complaints that she gave you at that time, take into consideration that she is now complaining of headaches and dizziness and that she has headaches on the average of about three times a week, that she has dizziness if she bends over too rapidly or turns her head to one side or the other rapidly, take into consideration that she is still complaining of pain in her lower back if she lifts heavy objects or bends over too far and take into consideration your findings over your period of treatment of her, doctor, and your findings in addition to those pertaining to her blood pressure and pulse, your findings in regard to her back and the soft tissues thereof. Doctor, taking all of that into consideration, do you have an opinion as to whether or not the things you found on your physical examination and the headaches and dizziness with which she is still complaining, as to whether or not they were caused by the accident in question. A. In my opinion I feel that her residual effects are a result of her accident.

"Q. Is your answer the same with regard to those conditions which you found at the time of your examination and your treatment thereafter, but which have now subsided? A. That is correct.

"Q. Doctor, using the same hypothetical question, do you have an opinion as to whether or not the headaches and dizziness that she now has will be a permanent condition? A. In my opinion there will be.

"Q. And with regard to the complaint of her lower back, the things that she complains of, assuming those to be true, do you feel that after this period of time, her condition will be a permanent one? A. I do."

From this testimony the jury might have found that plaintiff's injuries as described were permanent.

It is conceded by both parties that the substantive law of Illinois is applicable. The appellate courts of that state have held that where a permanent injury is proven it is proper to instruct the jury to consider future inability to labor or to transact business even though at the time the injury occurred the plaintiff was not engaged in any business or occupation and there was no evidence of earning ability. Fisher v. Jansen, 128

Ill. 549, 21 N.E. 598; Jerrell v. Harrisburg Fair, 215 Ill.App. 273; 25 C.J.S. Damages § 87, p. 619. The applicable rule is stated in 25 C.J.S. Damages § 87, supra, as follows:

" * * * recovery may be had for impairment or diminution of earning ability or power, even though it should not be shown that plaintiff has in the past earned anything or been engaged in a remunerative or compensable pursuit."

A review of the evidence convinces that there was substantial evidence that plaintiff suffered permanent injuries and that as a result of such permanent injuries she suffered a present loss of ability to work and labor in the future. This, we think, was sufficient basis for the instruction here complained of.

It is next argued that defendant was prejudiced by the ruling of the court permitting counsel for the plaintiff, in his opening argument, to say in effect that defendant's failure to proffer as witnesses the members of the train crew warranted the inference that, had they testified, their evidence would have been hurtful to defendant. In support of this contention defendant argues that the testimony of its Division Engineer conclusively established the cause of the derailment of the train. The Engineer was called as an expert and of course he was an employee of the defendant. As has heretofore been noted, his testimony was limited to the condition of the track and roadbed subsequent to the accident, without any reference to the condition of the wrecked train or the condition of the "run-around track" before the accident, nor did defendant offer any testimony as to the speed of the train, or what precautions, if any, had been taken to guard against accident in the use of this newly constructed segment of railroad over which all of defendant's traffic was being transported. It was defendant's Engineer's testimony that the derailment had, in his opinion, been caused by the fault of a contractor of the State of Illinois who constructed the embankment upon which the railroad track rested when the derailment occurred; that owing to slippage of the embankment, the temporary "run-around track" moved both horizontally and vertically, producing the derailment. The effect of the testimony of this witness was to admit that the grade or embankment was faultily constructed. The mere fact that it may have been constructed by the State of Illinois would certainly not absolve defendant, as a public carrier of passengers using such track, from liability for accidents resulting from the faulty construction. It manifestly accepted and used the track and it was not material by whom it may have been constructed. The opinion of defendant's expert was not bound to be accepted as a finality by the jury. The evidence of the condition of the track and roadbed at the time it was inspected by this witness might have been the result of the wreck, rather than the wreck being the result of the defect in construction. This witness testified on cross-examination that he had no knowledge as to the speed of the train and there was, as we have already observed, no evidence produced by the defendant as to the manner in which this train was operated over the "run-around track." Manifestly there were those in the employ of defendant who had knowledge as to what, if any, precautionary measures were taken in operating this train over a newly constructed segment of roadbed, especially the conductor and engineer in charge of the train. Among other things, they might have testified as to what, if any, "slow orders" as to the speed to be maintained in passing over this newly graded "run-around track", or other precautionary measures, were in effect, their familiarity with the "run-around track" which collapsed, the number of times they had previously traversed this area, what was the proper safe speed to maintain on the "run-around track," the speed of the train at the time of its derailment, the visibility at the time of the derailment, the possibility of discovery of the track slip-

page before running on to it, if that is what occurred, detailed information as to the exact manner in which the train derailed, and information as to the possibility of maintaining the passenger cars on the track after the engine derailed.

There was evidence indicating that the car in which plaintiff was riding was dragged some eighty feet forward on its side after its derailment. This physical fact may have impressed the jury as having some bearing on the manner in which the train was being operated.

Whether or not the court erred in permitting the argument of counsel is a procedural question and hence to be determined by decisions of Federal courts rather than decisions of State courts. Where witnesses are equally available to either of the parties, no adverse inferences may be drawn from the failure of one party to call them, but where witnesses are employees of one of the parties, they are not equally available to the other party, and failure to call them, where it appears that they may have knowledge of some material fact, warrants the inference that had they been called their testimony would have been adverse to the party failing to call them. The rule is succinctly stated in 20 Am.Jur., Evidence, Section 187, p. 192, as follows:

"It is well settled that if a party fails to produce the testimony of an available witness on a material issue in the cause, it may be inferred that his testimony, if presented, would be adverse to the party who fails to call the witness."

Where there has been a failure to call available witnesses who may have knowledge of material facts, such failure may properly be referred to in argument of counsel. In the circumstances presented by the record in this case, what is said in Chesapeake & O. Ry. Co. v. Richardson, 6 Cir., 116 F.2d 860, 865, is peculiarly apposite here. In the course of the opinion in that case it is said:

"The relationship existing between appellant and the three witnesses was such that each of them might reasonably be presumed to possess knowledge bearing on the issues involved. The unexplained failure of a party to produce a witness under such circumstances is a fit subject for fair comment and may justify an inference unfavorable to the party in default. Wigmore on Evidence, sec. 285, p. 368; Kierce v. Central Vermont Railway, 2 Cir., 79 F.2d 198; Lord & Spencer v. M. N. Stout Co., 1 Cir., 33 F.2d 60. It is a settled rule that counsel must restrict himself to the record for his facts and resort only to reason for his deductions, but within these limits freedom of ample argument is maintained. The extent of allowable comment rests largely in the trial court's discretion. There is no abuse here."

While this is a question of Federal procedure, the same rule is generally followed by the State courts. Thus, in Adam Hat Stores, Inc., v. Kansas City, Mo., Mo.App., 307 S.W.2d 36, 41, the court stated:

"It is a well-established general rule that the testimony of an employee of one of the parties who may be expected to have relevant testimony on the issue of the case is not equally available to the opposing party, and that it is proper for counsel to comment on the failure of the employer-party to produce that employee, and to suggest an inference that his testimony would have been unfavorable to such employer."

Counsel has great latitude in argument to the jury. He may not only base his argument on the evidence but he is entitled to argue all inferences that may reasonably be drawn from the evidence, or lack of evidence, subject to regulation by the court. The argument objected to in the instant case was neither intemperate nor inflammatory and we think

the court did not abuse its discretion in sanctioning it.

We have considered all other contentions of counsel but think them without merit and we are convinced that the court in the trial of this case committed no errors prejudicial to the defendant.

The judgment appealed from is therefore affirmed.