786 F.2d 892
 20 Fed. R. Evid. Serv. 363
 July A. CAMPBELL, a minor, and James E. Campbell, a minor By
and Through their next friend, Janet M. CAMPBELL, Appellants,
v.
The COLEMAN COMPANY, INC., Wichita, Kansas, Appellee.
 No. 85-1531EM.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 13, 1986.
Decided March 26, 1986.
 
 1
 M. Craig Cassing, Laguna Beach, Cal., for appellants.
 
 
 2
 Eugene Buckley, St. Louis, Mo., for appellee.
 
 
 3
 Before McMILLIAN, JOHN R. GIBSON, Circuit Judges, and MURPHY,* District Judge.
 
 
 4
 DIANA E. MURPHY, District Judge.
 
 
 5
 Minor plaintiffs July A. Campbell and James E. Campbell, by and through their next friend, Janet M. Campbell, brought this action for strict liability against defendant The Coleman Company, Inc. (Coleman), alleging that they were severely burned because of a defective gasoline lantern. A jury trial was held and a verdict returned in favor of Coleman. Plaintiffs appeal from the final judgment entered on the verdict and from the denial of their motion for a new trial. They raise three issues. First, they claim that the trial judge erred in admitting hearsay testimony from three witnesses who were not present when the children were burned. Second, plaintiffs contend that they should have been allowed to show that one of these witnesses had a bad reputation in the community for truthfulness. Finally, they allege it was error to allow defendant's attorney to raise a negative inference in his closing argument based upon plaintiffs' failure to produce the children's uncle at trial. For the reasons set forth below, we reverse and remand.
 
 I. BACKGROUND
 
 6
 On July 10, 1983, July Campbell, then age 5, and James E. Campbell, then age 4, were severely burned when staying at the home of their grandmother, Mildred Warren. The parties agree that a Coleman lantern was in use at the time of the accident, but dispute the cause of the children's injuries.
 
 
 7
 Plaintiffs presented evidence at trial to prove that the children's injuries were caused by the lantern exploding as it was operating on a corner of the front porch of Warren's house. Warren testified that the children had headed toward the porch after she had given them some candy and that she subsequently heard a "big" noise while she was in a bedroom of the house. She then located the children in the front room, just off the porch; they were enveloped in flames. Warren testified that she saw the lantern out on the porch in its previous position, showering flames from the top and base. She stated that she directed her son, Johnnie Lee Hayes, the children's uncle, to throw the burning lantern off the porch into the yard, which he did.
 
 
 8
 To prove liability, plaintiffs called an expert witness, Dr. Donald Creighton, Ph.D., Professor of Machine Design in the Department of Mechanical Engineering at the University of Missouri. Creighton testified that the lantern had exploded while in an upright position. In his opinion, the wrong generator had been placed upon the lamp when it was manufactured and this defect was the cause of the children's extensive injuries.
 
 
 9
 Plaintiffs called Dr. Boyd Terry, M.D., Director of the Burn Center of the University of Missouri, to prove damages. Dr. Terry testified that in his opinion the children had experienced "probably an explosion type of burn." Transcript, Vol. II, p. 126. According to Dr. Terry, July Campbell had been burned over forty percent of her body, while Jimmy Campbell was burned on thirty to thirty-five percent of his body.
 
 
 10
 Coleman has a different theory of the case. It contends that the lantern ignited after Johnnie Lee Hayes had filled it with gasoline, that he threw the burning lantern out of the house, and that it accidentally hit the children. At the start of its case, Coleman informed the trial judge that it had subpoenaed Hayes but failed to locate him. It therefore proposed to call three witnesses to testify to out-of-court statements made by Hayes. Over plaintiffs' objection, the trial court permitted these witnesses to testify under the "statements against interest" exception to the hearsay rule, Fed.R.Evid. 804(b)(3).
 
 
 11
 The first of these witnesses, Jerry Lee Davis, was a neighbor who drove the children to the hospital. He testified that at the hospital he asked Hayes what had happened. He reported that Hayes "said something about he lit the lantern after he just filled it up and they lit it and they had it outside and it blowed up, that's all I know." Transcript, Vol. III, p. 7. Davis added: "[H]e [Hayes] lit it and he set it down there and then it blowed up and then he threw it to the yard or whatever." Transcript, Vol. III, p. 8.
 
 
 12
 The second witness was Lilly Salts, a sister of Mildred Warren. Salts testified that she drove to the Warren home and asked Hayes what happened and he told her that the lantern had "blew up." Salts was not sure whether Hayes said at that time whether the lantern was in the house or whether it was on the front porch when it exploded. Salts also stated that Hayes told her that "he was putting unleaded gas in this Coleman lantern so they would have a light and it blowed up * * * [h]e said he pitched it out the door * * * [h]e said the little girl was in the line of fire." Transcript, Vol. III, p. 18.
 
 
 13
 The third witness was Morgan Pruett, who testified to a conversation with Hayes which apparently took place about one week after the incident. "He told me that he filled up the lantern, and was filling it up, and I understand him to say he overfilled it or something and he lit it, it caught on fire, and he picked it up and threw it out in the yard." Transcript, Vol. III, p. 46. Pruett said that Hayes did not tell him where the kids were when he threw the lantern, and he [Pruett] thought the kids were burned when the lantern blew up as it hit the ground. Plaintiffs moved to strike Pruett's testimony about the conversation on the ground that the statements attributable to Hayes were not against his interest within the meaning of the rule. The court denied the motion.
 
 
 14
 Coleman's final witness was its expert, an engineer named Randy May, who testified that the lantern was not defective.
 
 
 15
 After calling one rebuttal witness, plaintiffs sought to call another to testify that Pruett's reputation for truth and veracity was bad. The trial court denied the request.
 
 
 16
 In his closing argument, counsel for Coleman argued that the children were burned when the lantern was thrown outside by Hayes, as suggested by witness Salts, rather than by an explosion. The defense counsel told the jury that the party with the burden of proof had not brought in the one man who could tell how the incident occurred. He stated that if the plaintiffs "had wanted him here to tell you what happened, you can bet your bottom dollar he would be here." Transcript, Vol. III, p. 114. Plaintiffs objected to this argument on the grounds that Hayes was equally available to both sides, but the court overruled the objection.
 
 
 17
 The record indicates that both sides attempted to subpoena Hayes without success. At the time of trial, neither side knew where he was. Coleman had taken his deposition, but it was not introduced at trial. In his deposition, Hayes testified that he was in the yard when he saw the children were on fire and the lantern was shooting flames from its upright position on the front porch. He said he then picked up the lantern and threw it into the yard. He denied ever making any contradictory statements as to how the plaintiffs were burned.
 
 II. DISCUSSION
 
 18
 Plaintiffs contend that the trial court erred in admitting the out-of-court statements of Hayes as exceptions to the hearsay rule under Fed.R.Evid. 804(b)(3). They claim that the requirements of the rule were not met as Hayes was not "unavailable" and several of his statements were not against his interest.
 
 Rule 804(b)(3) provides in pertinent part:
 
 19
 (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 (3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability * * * that a reasonable man in his position would not have made the statement unless he believed it to be true * * *
 
 
 23
 Before a statement against interest may be admitted, the proponent of the evidence must demonstrate that the declarant is "unavailable." United States v. Pelton, 578 F.2d 701 (8th Cir.), cert. denied, 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978). Rule 804(a)(5) provides that a declarant is "unavailable" if "absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under subdivision (b)(2), (3) or (4), his attendance or testimony) by process or other reasonable means." This subsection is concerned with the absence of testimony, rather than the physical absence of the declarant. See generally H.R. 1597, 93d Cong., 2d Sess. 12 (1974), U.S.Code Cong. & Admin.News 1974, p. 7051; Cotchett and Elkund, Federal Courtroom Evidence, 163 (1984). Hayes was absent from the trial, but his testimony was available. Coleman had taken his deposition on July 5, 1984, eight months before trial. Since Hayes was not unavailable within the meaning of Rule 804(a)(5) and (b), his hearsay statements could not be admitted under the "statement against interest" exception in Rule 804(b)(3).
 
 
 24
 Coleman argues that plaintiffs failed to make a timely objection and conceded Hayes' unavailability.[1] The record indicates, however, that plaintiffs objected to the admission of the hearsay statements with enough specificity. Plaintiffs did not dispute that Hayes himself was unavailable at trial,[2] but they informed the court several times that the deposition of Hayes was available. To be sure, the objection could have been phrased in a more clear manner. The repeated references to the deposition were sufficient, however, to focus the trial court's attention on the nature of the unavailability requirement in Rule 804.[3]
 
 
 25
 Coleman next argues that even if the trial court erred in admitting the hearsay statements, it was harmless error. We cannot agree. At the close of plaintiffs' case-in-chief, no evidence had been introduced from which Coleman could have argued that plaintiffs' injuries were caused by the negligent actions of a non-party. Introduction of the inadmissible hearsay created a substantive defense for Coleman, allowing it to present to the jury another explanation for plaintiffs' injuries. Admission of the testimony enabled the jury to consider improper evidence in deciding causation, one of the central issues. Plaintiffs were thereby prejudiced. Nor can we find that the error is harmless because testimony about Hayes' prior statements would have been admissible to impeach him. Before the statements could have been admitted under this alternative theory, Coleman would have first been compelled to produce Hayes or read his sworn deposition testimony. If the deposition had been read, the jury would have heard Hayes flatly denying that he caused plaintiffs' injuries. The deposition would have corroborated plaintiffs' theory of the case. The jury also would have been instructed that the prior inconsistent statements were not received to prove the truth of the assertions, but only for impeachment purposes. See United States v. Rogers, 549 F.2d 490, 497 (8th Cir.1976), cert. denied 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977). Thus, the circumstances under which the testimony about Hayes' statements could have properly come in would have been very different than those under which it was actually presented. The fact that some of the testimony might ultimately have been admissible for impeachment purposes does not mitigate the prejudice to the plaintiffs. The admission of the hearsay statements under Fed.R.Evid. 804(b)(3) was therefore reversible error.
 
 
 26
 Because we find that none of Hayes' declarations were admissible under Rule 804(b)(3), we need not decide whether the statements testified to by Jerry Davis and Morgan Pruett met the rule's requirement that they were against his interest at the time made.[4] Nor need we decide whether the trial court erred in refusing to permit plaintiffs to call a character witness under Fed.R.Evid. 608(a) to impeach the credibility of Morgan Pruett.[5]
 
 
 27
 Plaintiffs' other allegation of error is that the trial court should not have permitted defense counsel to raise a negative inference in his closing argument about plaintiffs' failure to produce Hayes. They contend that Hayes was equally available to both sides. Coleman argues that it did not raise a negative inference in its argument, but merely asserted that plaintiffs failed to meet their burden of proof. It also maintains that Hayes was more available to plaintiffs.
 
 
 28
 In this diversity case, Missouri law governs the question of what may permissibly be argued in closing. See Johnson v. Richardson, 701 F.2d 753, 757 (8th Cir.1983). In closing, counsel for Coleman argued:
 
 
 29
 Johnnie Hayes would know what happened. Somehow, according to his mother, in this incident, Johnnie Hayes ended up with a burned hand. How did that happen? Johnnie Hayes was right there. He would know what happened, but he wasn't here. The parties who have the burden of proof did not bring in the one man who could tell you something about what the incident was that happened. Mrs. Warren says, when I say where is Johnnie, well, I don't know where he is. He is out of town looking for a job. Well, where is he out of town. I don't know.
 
 
 30
 Johnnie Hayes is Mildred Warren's son, who lives with her. He is the brother of Janet Campbell, the mother of these children. He is the uncle of these children. If they wanted him here to tell you what happened, you can bet your bottom dollar he would be here.
 
 
 31
 Transcript, Vol. III, pp. 113-14.
 
 
 32
 Coleman contends that its argument focused on the plaintiffs' failure to meet their burden of proof, rather than their failure to produce a witness. To be sure, Coleman's closing did refer to the burden of proof. In the final argument in Hill v. Boles, 583 S.W.2d 141 (Mo.1979) (en banc), however, the Missouri Supreme Court found a negative inference where there were frequent references to the burden of proof. The argument in Boles made far greater reference to the burden of proof than that in this case. Considering Coleman's closing as a whole, it is evident that its thrust was to raise a negative inference from plaintiffs' failure to call Hayes.
 
 
 33
 Under Missouri law, a negative inference may not be raised from a party's failure to produce a witness if the witness is equally available to both parties. Id.; Stotler v. Bollinger, 501 S.W.2d 558, 561 (Mo.App.1973). Whether a witness is equally available depends upon several factors. Among these factors are:
 
 
 34
 1. one party's superior means of knowledge of the existence and identity of the witness;
 
 
 35
 2. the nature of the testimony that the witness would be expected to give in the light of his previous statements or declarations, if any, about the facts of the case; and
 
 
 36
 3. the relationship borne by the witness to a particular party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation and make it natural that he would be expected to testify in favor of the one party against the other.
 
 
 37
 Hill v. Boles, 583 S.W.2d at 145-146.
 
 
 38
 The Boles balancing test applies where a presumption of availability may arise because of an employer-employee or doctor-patient relationship or where one side takes the deposition of a witness associated with the opposing party. Leehy v. Supreme Express & Transfer Co., 646 S.W.2d 786, 790, 791 n. 4 (Mo.1983) (en banc). The balancing test operates either to solidify or dispel the presumption. Id.
 
 
 39
 Application of the Boles test here leads to the conclusion that Hayes was equally available to both sides. Plaintiffs did not have superior knowledge of his existence or identity. Coleman knew who he was and had already deposed him. His deposition was transcribed and was on file at the time of trial. Nor does Hayes' relationship to the children make him more available to them than to Coleman. They too tried to subpoena him, without success. Under these circumstances defendant should not have been permitted to argue a negative inference from plaintiffs' failure to call Hayes to testify.[6] Failure to sustain an objection to an improper argument is prejudicial error under Missouri law. Hill v. Boles, 583 S.W.2d 141 (Mo.1979) (en banc); Halley v. Schopp, 400 S.W.2d 123, 126 (Mo.1966).
 
 III. CONCLUSION
 
 40
 The trial court erred in admitting hearsay testimony under Fed.R.Evid. 804(b)(3) and in allowing defense counsel to raise a negative inference in closing argument based upon the plaintiffs' failure to produce a witness. Since these rulings affected substantial rights of the plaintiffs, we reverse and remand for a new trial.
 
 
 
 *
 The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 Fed.R.Evid. 103 provides in part:
 Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
 (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context * * *
 
 
 [2]
 Coleman contends that plaintiffs conceded that Hayes was unavailable for purposes of Rule 804(a)(5) when counsel stated: "But as to the first step that Mr. Hayes is unavailable, I don't have any dispute about that." In context, however, the statement appears to refer only to Hayes' absence from trial. Plaintiffs' counsel immediately stated thereafter: "I tried to get him here, too" and the deposition of Hayes can "certainly * * * be read."
 The sufficiency of the objections becomes even more evident when placed into the context of the discussion before the court. Coleman specifically focused the trial court's attention on Rule 804(a)(5), correctly noting that it, as the proponent, had to demonstrate that it was unable to produce Hayes' attendance or testimony. Plaintiffs then specifically noted that a deposition of Hayes had been taken and could be read.
 
 
 [3]
 Because we find that plaintiffs made an adequate objection to the hearsay statements, it is not necessary to consider whether their admission was plain error reviewable without objection
 
 
 [4]
 It is not contested that the statements testified to by Lilly Salts were against Hayes' interest at the time she says they were made
 
 
 [5]
 We note, however, that while the trial court has broad discretion to exclude evidence under Fed.R.Evid. 403, evidence about the bad reputation of a witness for truth and veracity should generally be admitted as going to the witness' credibility and the weight to be given his or her testimony. See Osborne v. United States, 542 F.2d 1015, 1018 (8th Cir.1976); United States v. Truslow, 530 F.2d 257, 265 (4th Cir.1975). See also 3A Wigmore, Evidence Sec. 922, at 726 (Chadbourn rev. 1970) ("Character for truth is always and everywhere admissible.")
 
 
 [6]
 Several cases which have considered the closer familial relationship of parent and child or parent and step-child have found that the relationship does not automatically give rise to control over witness availability. See Bean v. Riddle, 423 S.W.2d 709 (Mo.1968); Lix v. Gastian, 287 S.W.2d 354 (Mo.App.1956) (relative in both cases equally available to the opposing side because a transcript of testimony from an earlier trial or deposition was available)