**Kenneth G. GEIMER, Appellant,**

v.

**Samuel T. PASTROVICH, Jr., Samuel T. Pastrovich, III, Appellees.**

**No. 90–2784.**

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1991.

Decided Oct. 16, 1991.

Robert H. Pedroli, Clayton, Mo., argued for appellant; Daniel J. Gauthier, Clayton, Mo., on the brief.

P. Michael Read, St. Louis, Mo., argued for appellees; Paul M. Storment, St. Louis, Mo., on the brief.

Before JOHN R. GIBSON, Circuit Judge, ROSS, Senior Circuit Judge, and LOKEN, Circuit Judge.

PER CURIAM.

Kenneth Geimer appeals from a judgment entered on an adverse verdict in favor of Samuel T. Pastrovich, Jr. and Samuel T. Pastrovich, III. Geimer fractured his right ankle when he stepped in a hole on the shore of Lake Chipaway, a commercial fishing lake operated by the Pastroviches, and he brought this diversity action claiming negligence. On appeal, Geimer claims that the district court[1] erred in: (1) allowing opposing counsel to comment in closing argument on the failure to call a witness equally available to both parties; (2) allowing questioning of Geimer about his fault in stepping in the hole; and (3) erroneously instructing the jury. He also claims that a side bar comment made by the judge during trial constituted reversible error. We affirm the district court's judgment.

Little can be gained by a detailed discussion of the facts in this simple slip and fall case other than as necessary in deciding the specific issues before us.

I.

The most troublesome argument raised by Geimer is his claim that the district court erred in failing to order a new trial because opposing counsel improperly commented on the nonproduction of a witness in closing argument. Geimer contends that because the witness in question was equally available to both sides, such a comment was prejudicially erroneous and constituted reversible error under Missouri law.

The testimony at trial relating to the argument in issue consisted of the following. Geimer testified that the first person to come to him after he fell was a man Geimer knew only as "the preacher." Geimer had had some short conversation with "the preacher" that morning about his luck fishing. Geimer had seen this man many times at the lake. Geimer testified that the wind blew his line across the preacher's line, causing him to reel in his line, and that he had to keep watching the line so that the two lines did not cross over. While Geimer walked to his left and reeled in the line, Geimer fell in a hole and went into the lake. Geimer testified that the preacher came and helped him get out of the water, got him his gear, and then helped him back into his chair. Geimer testified that the preacher actually had his hands on him and lifted him up, and in doing so, had his arm around him and supported him.

While the interrogatory answers were not read to the jury, the Pastroviches filed interrogatory answers listing Ferris Price as one of the persons known to be at the scene of the occurrence. Price was evidently the person Geimer knew as "the preacher." The interrogatory answers also identified John Guletz as a person known to have witnessed the occurrence, and Guletz's deposition was read in evidence at trial.

At Geimer's request, the district court instructed the jury that if a party fails to call a person having knowledge about the facts in issue, and that person is reasonably available to him, and not equally available to the other party, the jury could infer that the person's testimony was unfavorable to the party who failed to call him.[2]

During closing argument, Geimer's counsel referred to the preacher helping Geimer get up after the fall. Thereafter, Pastroviches' counsel argued:

> My point is, is that there were two independent witnesses, and I think when you go into that jury room there you're going to have to consider what did the independent witnesses say, what did the

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

2. The instruction read:
   If a party fails to call a person who possesses knowledge about the facts in issue, and who is reasonably available to that party, and who is not equally available to the other party, then you may infer that the testimony of that witness is unfavorable to the party who could have called the witness and did not.

witnesses say who don't have anything to gain by this, who don't have an ax to grind, who are not going to put money in their pocket, who are not going to enhance their position with their boss. There were two independent witnesses and I think you recall I spent some time with the plaintiff talking about the preacher.

\* \* \* \* \* \*

As I was saying there was a—I spent some time with the plaintiff talking about the preacher as he called him, and I even asked him if he knew his name and he said he thought—I think I asked him do you remember his name being Price and he said yeah, that kind of rings a bell.

\* \* \* \* \* \*

Back to the instruction and I'm sorry I'm deviating, but instruction number six says that if you find that there was a witness who could have been called by a proponent of a piece of evidence, and I'm trying to paraphrase it, you may infer that that witness would have testified adverse to the person who could have called him.

\* \* \* \* \* \*

If Mr. Geimer wanted to buttruss (sic) his testimony because everyone in this courtroom who has testified so far has denied that there was a hole where he says he fell, where is the preacher? Where is he? Why isn't he here? If you recall, I spent a lot of time with Mr. Geimer corroborating that the preacher had every opportunity to observe that hole. You remember that I asked him did he put his arms on you? Did he lift you up like this or did he grab you around the waist or did you just grab his hand, and of course, he couldn't remember, but the preacher was standing right there with him, and if the preacher was available to testify about the existence of a hole, where is he? Where is the preacher?

The substance of Geimer's argument is that the preacher was equally available to the defense, and therefore, Pastroviches' counsel improperly commented on Geimer's failure to call the preacher as a witness.

A threshold question is whether federal or Missouri law governs the propriety of closing arguments in this diversity case. Geimer argues that Missouri law applies. In *Illinois Central Railroad Co. v. Staples*, 272 F.2d 829 (8th Cir.1959), however, this court stated: "[w]hether or not the court erred in permitting the argument of counsel is a procedural question and hence to be determined by decisions of Federal courts rather than decisions of State courts." *Id.* at 834. *Illinois Central* examined the law from other circuits, observed that Missouri law on this subject was essentially the same, and held the district court did not err in allowing a statement by plaintiff's counsel during closing argument that the defendant railroad failed to call members of its train crew as witnesses. *Id.* at 834–35. *Duncan v. St. Louis–San Francisco Railway Co.*, 480 F.2d 79 (8th Cir.), *cert. denied*, 414 U.S. 859, 94 S.Ct. 69, 38 L.Ed.2d 109 (1973), dealt with a similar argument and stated that "[t]he propriety of arguments to the jury is a procedural question governed by federal law." *Id.* at 84 (citing *Illinois Central*, 272 F.2d at 834). In *Duncan*, we approved of the argument in question even though the plaintiff was an employee of the railroad and certain other crew members' depositions had been read into evidence. *Id.* at 85. *See also Vanskike v. ACF Indus., Inc.*, 665 F.2d 188, 209 (8th Cir.1981) ("[a]rgument of counsel is a procedural question to be determined by federal law."), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982).

*Johnson v. Richardson*, 701 F.2d 753 (8th Cir.1983), without engaging in detailed analysis of the question or citing the earlier three cases we have referred to above, applied Missouri law to the question of what may be permissibly argued in closing, *id.* at 757, as did *Campbell v. Coleman Co.*, 786 F.2d 892, 897–98 (8th Cir.1986). Both of these cases involved the argument on the inference arising from the non-production of a witness. *Campbell* reversed a judgment on this ground. *Id.* at 898. In

**1382**

both cases we referred extensively to Missouri law.[3]

The issue of which of these conflicting views we should accept, or indeed, under rules of stare decisis, which we are required to follow, is an issue we have determined that we need not reach.

■ Even assuming the closing argument is erroneous, we hold it is not prejudicial. This court in *Griffin v. Hilke*, 804 F.2d 1052 (8th Cir.1986), *cert. denied*, 482 U.S. 914, 107 S.Ct. 3184, 96 L.Ed.2d 673 (1987), stated:

Whether prejudice has resulted from a closing argument is a procedural question to be determined by federal law. The district court is in a better position than the court of appeals to determine whether prejudice has resulted from a closing argument. Therefore, to constitute reversible error, statements made in closing argument must be plainly unwarranted and clearly injurious. We will not disturb the district court's evidentiary rulings during closing argument unless there has been an abuse of discretion.

*Id.* at 1057 (citations omitted).

We are also mindful that we may not reverse for errors which do not affect the substantial rights of the parties. 28 U.S.C. § 2111 (1988). So viewed, we have no hesitation in determining that the argument, even if erroneous, was harmless beyond a reasonable doubt. Here, Geimer testified that he fell when he stepped into a hole a few feet from the water's edge. The only other witness called to testify about the occurrence, John Guletz, described a different fall. Guletz testified that he saw Geimer come over to another fisherman and reach in the lake for something, and that Geimer fell when the bank gave away and his foot went down into the shore line about two feet above the lake. On the

state of this record before the jury, we cannot conclude that the argument, a part of which was based on an instruction given to the jury and requested by Geimer, was "plainly unwarranted and clearly injurious," or that the district court abused its discretion in controlling the closing argument.

### II.

■ Geimer makes other claims of error that need not detain us long. Geimer argues that the district court committed reversible error by stating at a side bar conference: "Well it's not a big enough case to be in federal court, that's the truth of the matter." The record clearly reflects that the statement occurred at a side bar conference at the bench. Although Geimer has filed an affidavit that he heard the judge's comment while sitting farther from the judge than the jury and that he saw the jurors react, Geimer's counsel did not object when the judge made the comment. As a result, the district court had no opportunity to ask the jury whether it heard his comment. We cannot base a reversal on a party's affidavit, which was not before the district court and which conflicts with the record before us. *See United States v. Drefke*, 707 F.2d 978, 983 (8th Cir.), *cert. denied*, 464 U.S. 942, 104 S.Ct. 359, 78 L.Ed.2d 321 (1983).

■ Geimer also argues that the district court erred by allowing opposing counsel to examine him on the details of where he was looking when he stepped into the hole. While the Pastroviches' original answer did not allege contributory negligence, Geimer's complaint alleged that he did not and could not have known of the unsafe, dangerous, and defective condition. On the second day of trial, the district court allowed the Pastroviches to file an affirma-

---

**3.** In both *Johnson* and *Campbell*, we cited *Hill v. Boles*, 583 S.W.2d 141 (Mo.1979) (en banc), and in *Campbell* we specifically followed the more flexible formula articulated in *Hill.* 786 F.2d at 897–98. Pre-*Hill* cases rather uniformly held that employees, spouses, and treating physicians were not "equally available" and a comment or argument of adverse inference was justified. Earlier Missouri cases stating that it was preju-

dicial error to comment about witnesses equally available to both sides include *Belding v. St. Louis Public Service Co.*, 358 Mo. 491, 215 S.W.2d 506, 512–14 (Mo.1948) (en banc) and *Halley v. Schopp*, 400 S.W.2d 123, 125–27 (Mo. 1966). A further discussion of this issue is contained in *Leehy v. Supreme Express and Transfer Co.*, 646 S.W.2d 786, 789–91 (Mo.1983) (en banc).

tive defense of contributory negligence to conform to the proof. The district court did not err in allowing the questioning of Geimer about where he was looking before the fall. It related not only to the pleaded claim for relief, but also to the amended answer that the court permitted the Pastroviches to file.

▆▆ Geimer's final argument is that the district court erred in giving an instruction discussing the issue of contributory negligence. We read the argument essentially as going to the form of the instruction. Instructions are committed to the discretion of the district court. Insofar as Geimer attempts to argue Missouri procedural rules relating to the form of instructions, we have held on several occasions that we will not reverse on the basis of such objections. *Chohlis v. Cessna Aircraft Co.*, 760 F.2d 901, 904–06 (8th Cir. 1985).

We affirm the judgment of the district court.

JOHN R. GIBSON, Circuit Judge, concurring.

I concur in the court's opinion today but write separately to express my views on the conflicting cases spawned by this circuit as to whether Missouri or federal law governs closing arguments in diversity cases. I believe that *Illinois Central Railroad Co. v. Staples*, 272 F.2d 829 (8th Cir.1959), and the decisions following it, *Duncan v. St. Louis–San Francisco Railway Co.*, 480 F.2d 79 (8th Cir.), *cert. denied*, 414 U.S. 859, 94 S.Ct. 69, 38 L.Ed.2d 109 (1973), and *Vanskike v. ACF Indus., Inc.*, 665 F.2d 188 (8th Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982), correctly state that closing arguments are a matter of procedure, and the propriety of a closing argument is determined by federal rather than state law. *Johnson v. Richardson*, 701 F.2d 753 (8th Cir.1983), did not cite these earlier three cases, presumably because they were not raised in the brief. *Id.* at 757. Likewise, *Campbell v. Coleman Co., Inc.*, 786 F.2d 892 (8th Cir.1986), simply cited *Johnson* in holding that Missouri law

should govern closing arguments in diversity cases. *Id.* at 897. Although I concurred in *Campbell*, I believe that *Johnson* and *Campbell* did not recognize or discuss their evident conflict with these three earlier cases, and failed to follow controlling rules of stare decisis. I believe as a panel we may recognize that the three earlier decisions, *Illinois Central, Duncan* and *Vanskike*, properly control, as they should have controlled *Johnson* and *Campbell*.

I think it is also evident that closing argument and the control of it are inherently procedural issues such that federal laws should apply in diversity cases. We have clearly stated this to be the rule with respect to jury instructions in diversity cases. *Chohlis v. Cessna Aircraft Co.*, 760 F.2d 901, 904–05 (8th Cir.1985). We admittedly deal with difficult issues when we have conflicting lines of decisions in our panel opinions, and these issues must ordinarily be resolved by the court en banc. We should not hesitate to resolve this issue on the first occasion that presents itself, and we should then make clear that federal law governs the propriety of closing arguments of counsel in diversity cases.

Having said as much, I have little hesitation in determining that federal law allows counsel more leeway in commenting on the nonproduction of a witness than that allowed under Missouri law. The three cases I have pointed to contain our rules on nonproduction of witnesses, as well as the control of closing arguments generally. First, although *Illinois Central*, specifically deals with a comment on a party's failure to call employees as witnesses, and states that when witnesses are equally available to both parties, no adverse inferences may be drawn from the failure of one party to call them, the case goes on to describe a somewhat broader rule than that which exists in Missouri. *Illinois Central*, after quoting a text containing essentially the same rule, states: "Where there has been a failure to call available witnesses who may have knowledge of material facts, such failure may properly be referred to in argument of counsel." 272 F.2d at 834. I recognize that this rule is subject to limita-

tions and qualifications which, when the occasion demands, should be explored further.[4]

Applying these principles, Price, the preacher, was a witness equally available to both parties. It is true that he and Geimer had seen each other at the fishing lake many times. Although no employment relationship existed, Price was at the scene of the accident and helped Geimer after he fell. Thus, Price qualifies as a witness who "may have knowledge of material facts." *Illinois Central*, 272 F.2d at 834. Indeed, Price was the only person besides Geimer who was at the scene immediately after the fall giving him at least a peculiar and special opportunity to have knowledge of the scene. *Illinois Central* states that a party's failure to call a witness having "knowledge of material facts" is the proper subject of argument. *Id.*

*Griffin*, looked to statements made in a closing argument in the "context of the entire mosaic" of the argument. 804 F.2d at 1058. *Duncan*, also states that under federal law "counsel has great latitude in arguments to the jury, and considerable discretion is given to the trial court to control these arguments," 480 F.2d at 84–85. Thus, I need not ponder whether *Illinois Central*'s statement of the rule might be overbroad, as a portion of the closing argument to which Geimer objects was specifically aimed at his discussion of the court's instruction which Geimer requested. Looking at the argument as a whole and considering the principles enunciated in *Illinois Central*, *Duncan*, and *Griffin*, I cannot conclude that the district court abused its discretion in overruling the objections to the argument, even though the argument might be considered error under Missouri law.

Certainly, as the court's opinion points out today, if there was any error in the argument, it was harmless.

---

**4.** We have held that failure to produce a contract in the possession of one party may raise an adverse inference. *Mid–Continent Petroleum Corp. v. Keen,* 157 F.2d 310, 315 (8th Cir.1946). At least one circuit has held that the failure to produce evidence equally available to both parties raises an adverse inference that may be argued by both parties. *United States v. Erb,* 543 F.2d 438, 444–45 (2d Cir.), *cert. denied,* 429 U.S. 981, 97 S.Ct. 493, 50 L.Ed.2d 590 (1976). The issue is discussed generally with abundant citation of federal authority in some of the texts. *See McCormick on Evidence,* § 272 (3d Ed. 1984), which also states that either party should be permitted to argue the inference. McCormick states that rather than "spinning a web of rules," the wiser remedy is to allow an answering argument, and that the judge should intervene only when the argument is unfair and prejudicial. *Id.* This seems to comport with the federal cases in this and other circuits. *See also* 31A C.J.S. *Evidence* § 156(3) (1964) (inference warranted where witness possesses peculiar or special knowledge concerning a party's case) and 2 Wigmore, *Evidence* §§ 285–86 (1979).