**Diane WILLIAMS, Appellant,**

v.

**FERMENTA ANIMAL HEALTH COMPANY, Appellee.**

**No. 92–1116.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1992.

Decided Jan. 27, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied May 3, 1993.*

* The May 3, 1993 order, and concurring and dissenting opinions to the order, will be published in a subsequent volume.

John Wray Kurtz, Kansas City, MO, argued, for appellant.

Thomas Bradshaw, Kansas City, MO, argued, for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

Diane Williams sued the Fermenta Animal Health Company (Fermenta) for alleged intentional racial discrimination pursuant to 42 U.S.C. § 2000e *et seq.* (Title VII), 42 U.S.C. § 1981, and Missouri Revised Statute § 213.055 (1986). Williams claimed that she was constructively discharged from her position as a Technology Assistant at Fermenta because she is black. A jury found in favor of Fermenta, and Williams appeals from the resulting adverse judgment.

Williams raises five arguments on appeal. First, she contends that the district court[1] committed reversible error by its comments during the presentation of the evidence and closing arguments. Second, Williams contends that the district court erred by excluding evidence of the settlement of a prior discharge lawsuit against a predecessor corporation of Fermenta. Third, Williams challenges the jury instruction stating the necessary elements of her claim. Williams's fourth argument involves a "letter" written by the jury directed to the defendant. Finally, Williams contends that the court erred in giving an *Allen*[2] charge to the jury.

## I.

Williams argues that statements made by the district judge constitute reversible error. "While remarks made by a district judge within the hearing of the jury are often necessary, the judge should take care not to give the impression that he or she prefers one litigant over another." *Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322, 1330 (8th Cir.1985) (citation omitted).

"However, a few improper comments are not necessarily enough to require reversal." *Id.* (citation omitted). "In order to reverse on grounds of excessive judicial intervention, the record must either disclose actual bias on the part of the trial judge [or] leave the reviewing judge with an abiding impression that the judge's remarks ... projected to the jury an appearance of advocacy or partiality." *Czajka v. Black*, 901 F.2d 1484, 1486 (8th Cir.1990) (quoting *Warner v. Transamerica Ins. Co.*, 739 F.2d 1347, 1351 (8th Cir.1984) (citations omitted)).

■ The first specific improper comment alleged by Williams was made by the court in overruling an objection to a question posed by Mr. Bradshaw, counsel for Fermenta, during the direct examination of Marilyn Pummel, Fermenta's Director of Human Resources.

Q. You know there's been some implication in questions that have been asked by Mr Kurtz [counsel for Williams] that Fermenta had no interest in hiring minorities, is that true?

MR. KURTZ: Excuse me. Judge, I object to the characterization on that issue and I think we are going to resolve that otherwise.

THE COURT: Well, I—listen the jury will remember but I don't think there's been any implication by any witness in this case that they—that this company didn't hire minorities and that they weren't interested in hiring minorities. And so we don't need to ask that question.

MR. BRADSHAW: All right. Thank you, Your Honor.

Volume 3, Trial Transcript, at 95 (3 Tr. 95). Williams did not object to the court's response. Therefore, our review is limited to plain error. *Harris v. Steelweld Equip. Co.*, 869 F.2d 396, 402 n. 6 (8th Cir.), *cert. denied*, 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989).

---

**1.** The Honorable Scott O. Wright, Senior United States District Judge for the Western District of Missouri.

**2.** The name comes from the case of *Allen v. United States*, 164 U.S. 492, 501, 17 S.Ct. 154,

157, 41 L.Ed. 528 (1896), in which the Court approved supplemental instructions advising deadlocked jurors to consider each other's views.

The court's comment on the evidence was not proper. The comment, however, did indicate some deference to the jury's recollection of the evidence. This deference was supported by the jury instructions that repeatedly directed the jury not to consider comments by the court in deliberations because such comments were not intended to suggest any opinion as to any issue in the case. 3 Tr. 153–54, 156. Furthermore, the court's comment quoted above referred to discrimination in hiring and the issue in this case was discriminatory constructive discharge. While this court does not condone such commentary on the evidence, we are not left in this case "with an abiding impression that the judge's remarks ... projected to the jury an appearance of advocacy or partiality" that is sufficient to justify reversal on the basis of plain error.

■ The second comment occurred during closing arguments. Fermenta's counsel objected to counsel for Williams's characterization of the evidence in his closing argument. The court responded as follows:

> THE COURT: Wait a minute. Now, the jury, you've heard the evidence and you weigh the evidence and you make a decision about that and this is just argument. What they say—I had to say this, but what they say doesn't amount to a hill of beans. It's you, you've heard the argument. You decide on the evidence. So go ahead.

3 Tr. 180. Williams contends that the district judge's disparaging remark regarding the attorneys' arguments was improper. We agree. What lawyers have to say in final argument is very important. Taken in context, however, the judge's comment appears to have been intended to mean simply that the jurors, and not the attorneys, are solely responsible for determining the facts. The judge's comment referred to the attorneys for both parties and therefore did not indicate partiality or bias. Again, Williams did not object to this statement by the district court judge. We find that the comment does not constitute reversible plain error.

■ Williams also complains about two other statements by the trial judge. Because one of the statements was made out of the presence of the jury and the other after the jury had returned its verdict, the plaintiff suffered no prejudice. *Harris*, 869 F.2d at 401 (citing *Coast–to–Coast Stores, Inc. v. Womack–Bowers, Inc.*, 818 F.2d 1398, 1401–02 (8th Cir.1987)).

## II.

■ Williams next argues that the district court erred by excluding evidence of the settlement of a prior discrimination lawsuit against a predecessor corporation of Fermenta. Mamie Mitchell testified that she lost her job with S.D.S. Biotech Corporation because her position was eliminated when the corporation was restructured and split into three new companies, one of which was Fermenta. 2 Tr. 90–100, 103–13. She further testified that she was not hired to fill the similar position within Fermenta, but instead Fermenta hired a younger, white male. *Id.* Based on these events, Mitchell testified that she filed a complaint with the EEOC alleging race and sex discrimination. 2 Tr. 95–99, 107–09. The EEOC report was admitted into evidence. 2 Tr. 95. Mitchell testified that the claim eventually was filed in court and trial commenced. 2 Tr. 98–99. The complaint was admitted into evidence and identified both S.D.S. Biotech Corporation and Fermenta Animal Health Company as named defendants. Williams requested that the information regarding the settlement of the case should also be admitted, arguing that the evidence was relevant, constituted an admission, and was necessary to identify the appellee as a prior defendant. The district court rejected Williams's arguments and denied the request. 3 Tr. 123–24. We agree with the district court's ruling and find no abuse of discretion. *See* Fed.R.Evid. 408.

## III.

■ Williams next contests the district court's jury instruction outlining the necessary elements of her racial discrimination

claim. The court gave the following definition of the second element:

> And, second, plaintiff's race was a determining factor in defendant's actions.... Race was a "determining factor" only if defendant would not have acted toward plaintiff but for plaintiff's race; it does not require that race was the only reason for the decision made by the defendant.

3 Tr. 154–55.

Williams, however, had requested that the second element be defined as follows:

> *Second,* plaintiff's race was a motivating factor in defendant's actions.
>
> "Race was a motivating factor" only if defendant would not have acted toward plaintiff as it did but for plaintiff's race; it does not require that race was the only reason for the actions taken by defendant.

> . . . . .

> However, even if you find that both of the above elements have been proven, your verdict must be for defendant if defendant proves by the preponderance of the evidence, that it would have acted toward plaintiff as it did regardless of her race.

Williams objected at trial that her proffered instruction was not used. 3 Tr. 149.

On appeal, Williams contends that her mixed motive instruction should have been given. Because the instruction given by the court stated that plaintiff must prove that race was "*a* determining factor" and did not state that "determining factor" means "sole factor," it became "indistinguishable from [an instruction for] a mixed-motive claim." *Foster v. University of Ark.,* 938 F.2d 111, 115 (8th Cir.1991). "If race is only *a* determining factor, there can be others—and then, by definition, the case involves mixed motives." *Id.* Furthermore, although the words "motivating factor" were not used, the definition of the words "determining factor" in the court's instruction was the same as the definition of the "motivating factor" in Williams' proffered instruction. Therefore, the instruction given was for all practical purposes a mixed motive instruction, and

Williams has no cause for complaint with respect to the instruction.

## IV.

▮ The fourth issue stems from Fermenta's closing argument.

> MR. BRADSHAW: ... If in your deliberations you look at the evidence and you see a glaring defect in the way people are handled, in the way someone's job is explained to them and you didn't like the way it happened, sit down—and I'm sincere about this. I'm not being funny or flip. Write a letter to Marilyn Pummell, write a letter to John Hazzard, but do not allow that to interfere with the verdict. It would be a violation of your duty as jurors to take a situation and say I just don't think it [Williams's former position with Fermenta] should have been called for instance technology assistant. If it was a clerical position, they should have called it a clerical position.
>
> MR. KURTZ: Your Honor, I must object to any suggestion that the jury do anything other than do justice by their verdict in this case.
>
> THE COURT: Well, that's what the jury is going to do. Overruled. Go ahead.
>
> MR. BRADSHAW: And for your own note taking you can write to them at 10150 North Executive Boulevard in Kansas City, Missouri 64153....

3 Tr. 167–68. Williams argues that Fermenta's closing argument invited the jury to consider an alternative to deciding between a plaintiff's or a defendant's verdict. Williams asserts that this was apparent by the jury's question during deliberation, "Can we make a recommendation to Fermenta regarding policy along with our decision?" 4 Tr. 8. Over the objection of Williams, the court responded to the jury, "You are entitled to make any statement or recommendation that you desire." The jury returned a unanimous verdict for Fermenta on Williams's claim of racial discrimination as reflected on the jury verdict form and by the poll taken of the jury. 4 Tr. 9–10. On a separate sheet of paper attached to the verdict, however, the jury submitted the following statement:

The decision the jurors have reached should not be interpreted by anyone as the jury's acceptance of the treatment received by Diane Williams from certain employees of Fermenta Animal Health Company. We feel that management is negligent in effectively dealing with personnel problems that arose within the company but we're unable to find sufficient evidence to support Diane Williams's claim of racial discrimination by Fermenta Animal Health Company. 4 Tr. 10–11. Each juror signed the statement.

■ "[T]o constitute reversible error, statements made in closing arguments must be plainly unwarranted and clearly injurious. We will not disturb the district court's evidentiary rulings during closing arguments unless there has been an abuse of discretion." *Geimer v. Pastrovich*, 946 F.2d 1379, 1382 (8th Cir.1991), *quoting Griffin v. Hilke*, 804 F.2d 1052, 1057 (8th Cir.1986), *cert. denied*, 482 U.S. 914, 107 S.Ct. 3185, 96 L.Ed.2d 673 (1987). Furthermore, reversal is not appropriate when the error is harmless and did not affect the substantial rights of the parties. *Geimer*, 946 F.2d at 1382 (citing 28 U.S.C. § 2111 (1988)).

■ In this case, Fermenta's closing argument was inappropriate as it appeared to invite an alternative to deciding between a plaintiff's verdict or a defendant's verdict. We find such a tactic highly improper, and it should not have been permitted. Careful review of the jury's statement returned with the verdict, however, discloses that the jury in this case did properly decide on a verdict and did not return a compromise verdict. The jury returned an unqualified verdict for Fermenta on the jury form. Although the jury's attached statement plainly stated that they disapproved of the way Fermenta handled Williams's situation, they did not find sufficient evidence to support Williams's claim of *racial* discrimination. This statement is consistent with the unqualified verdict. With the benefit of the specific explanation by the jury, we find that any error resulting from Fermenta's improper argument and the court's permitting of the return of something other than a verdict was harmless.

## V.

■ As Williams's final argument, she contends that the *Allen* charge that was given was overly coercive. To determine whether an *Allen* charge had an impermissibly coercive effect on the jury, we must consider "1) the content of the instruction, 2) the length of deliberation after the *Allen* charge, 3) the total length of deliberation, and 4) 'any indicia in the record of coercion or pressure upon the jury.'" *United States v. Thomas*, 946 F.2d 73, 76 (8th Cir.1991) (citations omitted).

The content of the instruction given in this case is virtually identical to the *Allen* instruction that we expressly approved in *Thomas*, 946 F.2d at 76–78, with one exception. In *Thomas*, a criminal case, the instruction included a paragraph regarding the burden of proof requirement of beyond a reasonable doubt. The contested *Allen* instruction in this civil case did not include a paragraph regarding the preponderance of the evidence standard for the burden of proof. The initial instructions, however, clearly explained the burden of proof standard. 3 Tr. 154.

The record indicates that the trial lasted two full days and the morning of a third day. The jury deliberations lasted two hours in the afternoon of the third day and three hours in the morning of the fourth day before the jury sent the district court judge a note stating the following: "The jury is unable to come to a unanimous decision. Please advise." 4 Tr. 4. After lunch, the court gave the jury the *Allen* charge. The jury then resumed deliberations for forty-five more minutes before the jury asked the question discussed above regarding whether they could make "a recommendation to Fermenta regarding policy." After receiving the court's response, the jury continued to deliberate for an additional thirty minutes before returning a verdict in favor of defendant. The length of deliberation after the *Allen* charge was approximately an hour and fifteen minutes, which we find does not indi-

cate a coercive effect. *See United States v. Smith*, 635 F.2d 716, 721–22 (8th Cir. 1980) (forty-five minutes did not indicate a coercive effect) (citations omitted). The total deliberation time of over six hours for a two and a half day trial "does not strike us as being 'so disproportionate as to raise an inference that the *Allen* charge coerced the jury.'" *Thomas*, 946 F.2d at 76 (quoting *Smith*, 635 F.2d at 722).

Williams argues that the record evinces pressure and coercion on the jury. In support of this assertion, Williams points to the previously discussed improper comments by the district judge and the defendant's invitation to the jury to write a letter to Fermenta. As explained above, we do have substantial concerns with respect to these issues. These concerns, however, do not compel us to conclude that the *Allen* charge was impermissibly coercive. The district court did not err when it gave the *Allen* charge to the jury.

## VI.

The judgment of the district court is affirmed.

HEANEY, Senior Circuit Judge, dissenting.

I believe defense counsel's closing argument recommendation that the jury write a letter to the management of the defendant company was plainly unwarranted and injurious, and that the trial court abused its discretion in allowing it. Although the majority specifically "find[s] such a tactic highly improper," and concedes that "it should not have been permitted," *supra* at 266, these observations provide little comfort to the aggrieved plaintiff. Because I believe this court should never tolerate this kind of courtroom antic, I must respectfully dissent.

Counsel's tactic is most disturbing in a case as close as this one. At least one observer has noted that "[w]henever juries seem troubled over a case, they seem to turn eagerly for a compromise solution." Jon M. Van Dyke, *The Jury as a Political Institution*, 16 Cath.Law. 224, 239 (1970). The jury in this case deliberated for the better part of two days without agreeing on a verdict. It remained deadlocked even after the judge had administered the *Allen* charge. Nonetheless, after the jury sought permission from the judge to do what counsel had suggested in closing argument, and received a blanket approval, it quickly came back with its compromise solution.

Judge Wright recognized how close this case was. Before responding to the jury's inquiry whether it could recommend new policy to the company, he encouraged counsel to negotiate a settlement. His comments are telling:

> You spent all this damn money and time and I'm just not going to try it again. You get to talking about settling this. In the first place, the defendant has got some liability here, you even invited them to write notes to the company telling them what they're doing wrong. And it's a slim case. Damn it, it's worth something.

4 Tr. at 4.

The majority today encourages resourceful counsel again to use the "highly improper" tactic because they know that they, too, might get off with merely an admonition not to repeat it. I would halt the practice immediately by reversing this judgment and remanding for a new trial.

Because I find this error so egregious, I do not believe it necessary to examine the other alleged errors. All the issues are troublesome, however, and highlight the probability that the plaintiff did not receive a fair trial.